ODOM, Justice.
 

 On January 28, 1937, Jasper S. Brock, then state bank commissioner and supervisor of homestead and building and loan associations, filed a petition in thé Civil District Court for the Parish of Orleans, alleging that the Aetna Homestead Association had been unable for several years to meet in full the demands made upon it for withdrawals and had not earned reasonable profits, that its capital was impaired, and that it was in an unsound and unsafe condition, for which reasons he had closed the association and 'had taken charge of its affairs, pursuant to the authority vested in him by Section 67, Act 140 of
 
 1932,
 
 as amended by Act 44, Second Extra Session of 1934. He prayed that the homestead association be ordered to show cause why he should not be confirmed as liquidator. He was represented by Charles J. Rivet, special assistant attorney general, and by Louis H. Yarrut, of counsel.
 

 The homestead association filed an answer and several other pleadings, in each of which it opposed the application of Brock to be confirmed as liquidator. Its oppositions and objections were overruled by the court, and Brock was confirmed as liquidator by judgment rendered and signed on April 7, 1937. '
 

 Brock appointed William E. Wood as special agent to assist him in the performance of his duties as liquidator of the homestead association, and the appointment of Wood was approved by the court.
 

 Brock appointed Charles J. Rivet as counsel to represent him, and with Brock’s approval Rivet called in Louis H. Yarrut as associate counsel.
 

 By order of the court an inventory and appraisement of the assets of the homestead association was made, filed, and approved by the court. The inventory showed total assets amounting to $102,-482.35.
 

 Jasper S. Brock was succeeded as state bank commissioner and supervisor of homestead and building and loan associations by Wilfred J. Begnaud on June 2, 1940. On Begnaud’s application, he was substituted as liquidator of the homestead association in lieu of Brock by judgment of the Civil District Court. Begnaud appointed Ambrose M. Smith as special agent in place of Wood to assist him in the liquidation of the association, and Smith’s appoint
 
 *467
 
 ment was confirmed by the court on August 8, 1940. Rivet and Yarrut represented Begnaud as counsel in his application to be confirmed as liquidator. On September 10, 1940, Begnaud appointed other counsel to represent him, on which date the services of Rivet and Yarrut as attorneys ended.
 

 It is thus seen that Rivet and Yarrut served as attorneys for Brock and Begnaud, the liquidators, from April 7, 1937, to September 10, 1940, a period of three years and five months, and that Wood served as special assistant to the liquidator from April 7, 1937, to August 8, 1940, approximately three years and four months.
 

 On March 26, 1941, Charles J. Rivet and Louis H. Yarrut, through their counsel, James C. Henriques, proceeded by rule against Wilfred J. Begnaud to collect $4,-000 for legal services which they had rendered in connection with the liquidation proceedings. They alleged that, in addition to services performed in the presence of the court, they had rendered legal services in connection with the following matters : (a) The preparation of the accounts filed in the proceeding; (b) the consummation of sales of real estate for prices aggregating $20,024; (c) a dation en paiement for $2,417.22; (d) 11 miscellaneous claims against the association, aggregating $5,152.90; (e) the institution of three foreclosure proceedings involving demands aggregating, in principal only, $8,-044.38; (f) the defense of an expropriation proceeding; (g) the examination of claims for lost certificates and applications for transfers of share-holders’ interests resulting from assignments and successions; and additionally, that they were constantly available and called upon for consultation and advice on all matters affecting the liquidation.
 

 They alleged that they had made demand upon Wilfred J. Begnaud, now in office as liquidator of the homestead association, to fix and pay the compensation due them, and that Begnaud refused to do so, suggesting that the matter of fixing their fees be referred to the court. They alleged that their fees should be paid by preference.
 

 On the same day, March 26, 1941, William E. Wood through his counsel, James C. Henriques, ruled Begnaud to show cause why he should not be paid $3,000 for his services as special agent. He alleged that he had received nothing for his services and had made demand on Begnaud to fix and pay the amount due him, and that Begnaud had refused to do so, suggesting that the matter of fixing his fees be submitted to the court for its determination. His rule to show cause enumerates at length and in detail the services rendered by him during the period of three years and four months in which he served as special agent, for all of which services, he alleged, he should be paid the sum of $3,000 by preference.
 

 Counsel for defendant in rule filed a number of exceptions, all of which were overruled by the trial court. Following the ruling of the district court overruling the' exceptions, they applied to this court for writs of certiorari. Their applica
 
 *468
 
 tion for writs was refused on June 18, 1941. Therefore, the exceptions and objectio'ns to the capacity of the parties and the mode of procedure are not now before the court.
 

 Defendant in rule filed a pleading styled “Exceptions and Answer”. In this pleading he reiterated the exceptions previously filed, which exceptions, as we have stated, were disposed of by our ruling refusing the application for writs on June 18, 1941.
 

 . In his answer, defendant in rule did not deny that Rivet and Yarrut as attorneys and Wood as special agent had rendered the services which they claim to have rendered, nor does he deny that, if the attorneys and the special agent are to be paid for their services on a quantum meruit basis, they should be paid the amounts claimed by them.
 

 His main defense is that plaintiffs in rule have already received fees in connection with the liquidation of other homestead and building and loan associations sufficient to remunerate them for all services rendered in this case. He alleged that in 1936 and prior thereto a large' number of homestead associations in New Orleans had been taken over for liquidation by Jasper S. Brock, then state bank commissioner, and that in November, 1936, Brock, with the assistance of Rivet and Yarrut as attorneys and Wood as special agent, devised a plan which- they called a “Cooperative Program” for the liquidation of all the associations previously taken over for liquidation and those which might be taken over later for that purpose, and that the cooperative plan was approved by the Federal Savings and Loan Association and by the Governor. He alleged that the announced purpose of the cooperative program was to save expenses; that by said program all the associations were to be grouped together, and that under said program “the Liquidations were 'all placed under Assistant Supervisor, Honorable W. E. Wood, and the business thereof was handled in one office by one set of employees who attended to one or the other liquidations as need arose.' That according to the records of said Liquidations in the Civil District Court the legal business of the Liquidations up to the time when respondent became Supervisor of Homesteads on June 2, 1940, appears to have been transacted by Messrs. Rivet and Yarrut; and Assistant Supervisor Honorable W. E. Wood performed the duties of Special Agent, as proposed by him to the Federal Agency and Governor Leche, and approved by them.”
 

 He further alleged that, in a letter or circular prepared and printed by Brock and mailed to each of the associations, the associations were informed that under the cooperative plan devised it would not be necessary to appoint a special agent to liquidate each of the associations and that .all of the business could be handled by the homestead supervision division of the bank department, and that by this method the fees of the attorneys and the special agent would be prorated among the different associations.
 

 He alleged that, as shown by the records of the Givil District Court, these
 
 *469
 
 attorneys and Wood had already been paid large fees in connection with the liquidation of other associations, and that it was understood by the representatives of the Aetna Homestead Association that the fees already paid covered or included the fees now claimed by Rivet and Yarrut as attorneys and Wood as special agent, incurred in connection with the liquidation of the Aetna Homestead Association.
 

 After trial of the rule to show cause, there was judgment in favor of Rivet and Yarrut, attorneys, for $4,000 and in favor of Wood, 'special agent, for $3,000. From these judgments defendant in rule has appealed.
 

 In connection with the special defense set up by defendant in rule, it need be said only that the special “Cooperative Program” for the liquidation of all of the homestead associations in New Orleans was opposed by quite a number of them and for that reason was never carried out. That program.was devised by Brock and submitted by him to the homestead associations in November, 1936. This, association, the Aetna, was taken over for liquidation on April 7, 1937, several months after the cooperative program wás suggested and after that program seems to have been abandoned. There is, therefore, no merit in the special defense urged by defendant in rule.
 

 Now, as to the merits of the case, Mr. Rivet, one of the attorneys, testified that the services rendered by him and Mr. Yarrut were worth on a quantum meruit basis at least $4,000. He was questioned and cross-questioned as to what particular services were rendered. He specifically enumerated the various pleadings filed in connection with the appointment and approval of Brock as liquidator and Wood as special agent, as well as the pleadings and services rendered in connection with several foreclosure proceedings and the transfers of certain property to the association by dation en paiement. He testified that he and Mr. Yarrut had represented the association in one expropriation proceeding, and said that they had rendered various and sundry other services in connection with, certain matters specifically enumerated, and had for a period of 40 months been available for consultations and had during said time given such advice and counsel as they were called upon to give by Brock and Wood, the agent. He testified that the fees demanded were not excessive, but reasonable. His testimony covers 26 pages of the record.
 

 During the entire time that Mr. Rivet was on the stand, there were present in court two attorneys, Mr. John E. Jackson and Mr. George S. Guión, both members of the New Orleans bar. Admittedly Mr. Jackson and Mr. Guión are attorneys of high standing and are capable of estimating the value of legal services rendered by members of their profession. They were called as witnesses for plaintiffs in rule. Mr. Jackson testified- that he heard Mr. Rivet’s testimony relating to the services which he and Mr. Yarrut had rendered, and that in his opinion the fee which they claimed was reasonable.
 
 *470
 
 Mr. Guión, who also heard Mr. Rivet testify, said that in his opinion the services rendered by Mr. Rivet and Mr. Yarrut were worth more than the amount claimed. He said further that, if he had been called upon to render such services, he would have demanded a fee in excess of the amount claimed.
 

 The defendant in rule offered no testimony to contradict that of Mr. Rivet, Mr. Jackson, and Mr. Guión as to the value of the services rendered by plaintiffs in rule. The trial judge, before whom the liquidation proceedings had been carried on from their inception and in whose presence the greater portion of the services by the attorneys had been rendered and who heard Mr. Rivet, Mr. Jackson, and Mr. Guión testify, rendered judgment in favor of the attorneys for $4,000, the amount claimed by them.
 

 We are asked to reduce the amount of the judgment. We cannot do so, for the reason that the defendant, in rule has offered no testimony at all to contradict the testimony offered by plaintiffs in rule as to the value of the services rendered. Clearly, under the circumstances, we cannot disturb the judgment rendered by the trial court.
 

 The same is true as to the judgment rendered in favor of Mr. Wood. He testified at length and in detail as to the services rendered by him during his tenure of three years and four months as special agent. He said that his services during all that time were well worth on a quantum meruit basis the amount which he was claiming, and further, that, if the fee were based on a percentage basis, as is frequently done in matters-of this kind, he would be entitled to 3 per cent of the amount of the assets of the concern.
 

 Defendant in rule offered no testimony whatever to contradict that of Mr. Wood. The trial judge, after hearing Mr. Wood’s-testimony, rendered judgment in his favor for $3,000. We cannot say that the judgment is excessive. A decree by us disturbing the judgment appealed from would have no basis whatever to support it.
 

 The judgments in favor of the attorneys for $4,000 and in favor of the special agent for $3,000 are affirmed.