*224
 
 ODOM, Justice.
 

 Charles J. Rivet and Louis H. Yarrut, attorneys at law, ruled Wilfred J. Begnaud, statutory liquidator of homestead and building and loan associations, to show cause why he should not fix and pay their fees for professional services rendered in connection with the liquidation of the Tulane Homestead Association. They alleged that their services, computed on a quantum meruit basis, were worth $7,500, and they prayed for judgment fixing their fees at that amount, and that Begnaud be ordered to pay them that amount, less $482.10 which they had already been paid. There was judgment in favor of plaintiffs in rule as prayed for, and the liquidator appealed devolutively to this court.
 

 William E. Wood, alleging that he was appointed and had acted as special agent of the liquidator, ruled the liquidator to show cause why his fees in connection with the liquidation of. the Tulane Homestead Association should not be fixed and paid. He alleged that his services were worth $3,500, and prayed for judgment fixing his compensation at that amount and ordering the liquidator to pay it. There was judgment in his favor as prayed for, and the liquidator appealed devolutively to this court.
 

 The two cases were tried, in the district court at the same time, although a separate record was made in each. In this court the cases were consolidated and were argued together. It is therefore not necessary to write separate opinions in the cases.
 

 The record shows that on January 28, 1937, Jasper S. Brock, then state bank commissioner and supervisor of homestead and building and loan associations, filed a petition in the Civil District Court for the Parish of Orleans, alleging that the Tulane Homestead Association had been unable for some time to meet in full the demands made upon it for withdrawals, and that it was in an unsound and unsafe condition; that it had not earned reasonable profits for a considerable length of time, and that it was inexpedient and hazardous for said association to continue in business, and that for these reasons he had on January 27, 1937, closed the association and taken charge of its affairs, pursuant to the authority vested in him by Section 67 of Act No. 140 of 1932, as amended by Act No. 44 of the Second Extra Session of 1934. He prayed that the homestead association be ordered to show cause why he should not be confirmed as liquidator. He was confirmed as liquidator by judgment of the Civil District Court rendered and signed on February 5, 1937.
 

 On February 8, 1937, Brock appointed William E. Wood as special agent to assist him in the performance of his duties in connection with the liquidation of the homestead, and the appointment of Wood was approved by the court. Charles J. Rivet represented Brock in his application to be appointed liquidator and in his application to be confirmed as such. Rivet subsequently called in Louis H. Yarrut as associate counsel, and the two attorneys, Rivet and Yarrut, acted as counsel for Brock in all proceedings had in connection with the liquidation during Brock’s administration.
 

 
 *226
 
 On April 20, 1937, Brock filed an inventory which showed that the total assets of the association amounted to $191,937.17. Brock, assisted by Wood as special agent, filed an account on April 1, 1938. There was a notation on this account reciting that no provision had been made in that account for the fixing and payment of the fees due counsel and the special agent, and that counsel and the special agent had agreed to postpone the fixing and payment of fees until a later date. Brock filed a second account - on January 15, 1940, on which account there is a similar notation with reference to the fixing and paying of the fees of counsel and the special agent.
 

 Jasper S. Brock was succeeded as state bank commissioner and supervisor of homestead and building and loan associations by Wilfred J. Begnaud on June 10, 1940, and on the same date Begnaud was substituted for Brock as liquidator of the Tulane Homestead Association by judgment of the Civil District Court. On August 7, 1940, Begnaud appointed Ambrose M. Smith as special agent to take the place of William E. Wood, and this appointment was approved by a judgment of the Civil District Court.
 

 Charles J. Rivet and Louis H. Yarrut represented Begnaud in his application to be substituted for Brock as liquidator of homestead and building and loan associations in the City of New Orleans, and represented him also in his application to have the appointment of Smith confirmed. On September 9, 1940, Begnaud appointed Harry R. Cabral and James E. Courtin to represent him as counsel in the liquidation of the Tulane Homestead Association.
 

 It thus appears that Rivet and Yarrut served as attorneys for Brock and Begnaud, the liquidators, from January 28, 1937, to September 9, 1940 — a period of approximately three years and eight months — , and that Wood served as special agent to assist the liquidator from February 8, 1937, to August 7, 1940 — a period of approximately three years and six months.
 

 Rivet and Yarrut filed their rule to show cause on April 10, 1942, and Wood filed his rule on April 13. The attorneys and Wood, the special agent, alleged that they had made demand on Begnaud, the present liquidator, to fix and pay their fees, and that he had refused to do so.
 

 Begnaud, the liquidator, admitted in his answer to the rule filed by Rivet and Yarrut that he had refused to fix and pay their fees, and that his reason for such refusal was that “he believed that the plaintiffs in rule had been paid sufficiently well by virtue of their representation, as attorneys, of many other homesteads in liquidation”.
 

 In his answer to the rule filed by Wood, the special agent, the liquidator admitted that he had refused to fix and pay the fees demanded, and stated as his reason for such refusal that “he believed that the plaintiff in rule had been paid sufficiently well by virtue of his representation, as Special Agent, of many other homesteads in liquidation, and further, by virtue of the fact that while acting as Special Agent for various homesteads in liquidation, he was also receiving a salary of five hundred
 
 *228
 
 dollars, ($500.00) per month from the State Banking Department for services rendered to the State Banking Department, under whose jurisdiction the liquidation of the Tulane Homestead Association took place”.
 

 Begnaud, the liquidator, did not deny in his answer, nor did he deny when called as a witness, that Rivet and Yarrut, as attorneys, and Wood, as special agent, had in fact rendered the services which they claim to have rendered. His main defense in each of the cases was that, since Rivet and Yarrut, as attorneys, and Wood, ast special agent, had received large fees in connection with the liquidation of certain other homestead associations, they were not entitled to any additional compensation for their services in connection with the liquidation of the Tulane Homestead Association. He urged the further defense that the fees claimed were excessive, and that, even if it be conceded that plaintiffs in rule are entitled to additional fees in connection with the liquidation of the Tulane Homestead Association, those fees should have been fixed in accordance with the proposal made by Rivet and Yarrut in a letter dated March 11, 1938, addressed to Jasper S. Brock, liquidator. That letter had reference to fees which should be fixed in connection with the liquidation of the Conservative Homestead Association, the Industrial Homestead Association, the Liberty Homestead Association, the Phoenix Building and Homestead Association, and the Standard Homestead Association. In that letter Rivet and Yarrut stated to Brock, the liquidator, that they thought their fees should be fixed according to the rules adopted by the New Orleans Bar Association for the administration of successions. They stated that the minimum schedule provided by the bar association was 3 per cent of the gross value of the estate up to $10,000, and 2% per cent on the excess thereof.
 

 Brock, the then liquidator, accepted the proposal made by Rivet and Yarrut, and paid their fees accordingly. At the trial of the rules in the present cases, Begnaud, the present liquidátor, attempted to file this letter in evidence. Counsel for plaintiffs in rule objected to the filing of this letter in evidence on the ground that it had no reference whatever to the liquidation of the Tulane Homestead Association. The objection was sustained by the court. The defendant in rule did not except to the ruling of the court.
 

 Mr. Begnaud testified that, at the time he became state bank commissioner and supervisor of homestead association, he found that there were 13 homestead associations then in process of, liquidation, and that these associations were consolidated into one group for the purpose of liquidation, and that on investigation he had learned that plaintiffs in rule had been paid large fees in connection with the liquidation of some of the other associations, and that the amount which they had already received was sufficient remuneration.
 

 The identical issue was raised in the case of In re Aetna Homestead Ass’n, decided by this court on March 2, 1942, reported in 199 La. 929, 7 So.2d 188, 191. In that case we said with reference to this special defense: “In connection with the
 
 *230
 
 special defense set up by defendant in rule, it need be said only that the special ‘Cooperative Program’ for the liquidation of all of the homestead associations in New Orleans was opposed by quite a number of them and for that reason was never carried out. That program was devised by Brock and submitted by him to the homestead associations in November, 1936. This association, the Aetna, was taken over for liquidation on April 7, 1937, several months after the cooperative program was suggested ■ and after that program seems to have been abandoned. There is, therefore, no merit in the special defense urged by defendant in rule.” The ruling in that case is applicable to this one.
 

 As to the defense that Wood, the special agent, was being paid $500 a month by the State Banking Department for services rendered to that department, under whose jurisdiction the liquidation of the Tulane Homestead Association took place, it is sufficient to say that the defendant in rule offered no proof to sustain that defense.
 

 On the merits, plaintiffs proved that the fees and compensation charged were not excessive. Mr. Rivet took the stand as a witness on behalf of Mr. Yarrut and himself, and testified at length as to the services rendered by them. He testified that he and Mr. Yarrut, as attorneys, had rendered services in connection with the following matters, in addition to those rendered before the court: (1) the preparation and homologation of two accounts; (2) the consummation of 16 sales for prices aggregating $48,118.67; (3) the consideration of five claims for amounts aggregating $1,279.84; (4) 12 foreclosures involving claims aggregating more than $76,730, including attorney’s fees of more than $3,-645; (5) the prosecution of a proceeding in the Orleans Court of Appeal;' (6) the examination of at least four probate proceedings for approval of transfer of shares;
 
 (7)
 
 the effecting of a plan by which notes held in pledge were delivered by the pledgee to the liquidator for foreclosure by the latter so as to protect the property; (8) advising and giving opinions respecting the general operations of the liquidation and administration of the assets, and being constantly available for conferences.
 

 Mr. Rivet testified that their services were worth $7,500 on a quantum meruit basis, and admitted that they had been paid $482.10.
 

 During the entire time that Mr. Rivet was on the stand, there were present in court and giving attention to his testimony two experienced and reputable attorneys of the New Orleans Bar, Mr. John E„ Jackson and Mr. George S. Guión. They were called as witnesses and testified that in their opinion the fee which plaintiffs in rule were demanding was reasonable.
 

 The defendant in rule offered no testimony to contradict that of Mr. Rivet, Mr. Jackson, and Mr. Guión as to the value of the services rendered by plaintiffs in rule.
 

 Mr. Wood, the other plaintiff in rule, went into detail in his testimony as to the services which he had rendered in connection with the liquidation of this homestead association. He testified that his
 
 *232
 
 services were well worth $3,500, and no witness was called by the defendant in rule to contradict his testimony.
 

 The appellees in these cases answered the appeal, alleging that the appeals taken were frivolous, and that they were entitled to receive, in addition to the judgments rendered in their favor in the lower court, 10 per cent of the amount of the judgments as damages for the loss which they had sustained by reason of the taking of these frivolous appeals, and prayed that the judgments of the lower court be amended by allowing the appellees 10 per cent of the amount of the judgments as damages.
 

 Article 907 of the Code of Practice provides that the court, in confirming a judgment appealed from, shall compel the appellant to pay all the costs, and provides further that: “It may even condemn him to pay to the appellee, if the latter claims it by his answer, such damages as it may think equivalent to the loss which he has sustained by the delay consequent on the appeal, provided the amount of such damages shall not exceed ten per cent of the value of the amount in dispute.”
 

 The judgment in this case is not against Wilfred J. Begnaud personally, but against him as statutory liquidator of homestead associations. To assess 10 per cent damages for taking the appeal in this case would be to cast upon the stockholders or creditors of the association a considerable burden. Those who are financially interested in the affairs of the association are not responsible for the prosecution of this appeal. We do not think they should be penalized by the infliction of the damages claimed by appellees.
 

 For the reasons assigned, the judgment appealed from is affirmed.
 

 McCALEB, J., takes no part.
 

 ROGERS, J., absent.