14 So.2d 447

In re PHŒNIX BUILDING & HOME-
STEAD ASS'N.

Nos. 36966, 36967, 36989, 36990.

May 17, 1943.

Rehearing Denied June 21, 1943.

Gamble & Gamble, of New Orleans, for appellant.

J. C. Henriques, of New Orleans, for appellees.

FOURNET, Justice.

Wilfred J. Begnaud, as the Liquidator of the Phoenix Building and Homestead Association, is appealing from a judgment maintaining two oppositions to his provisional account and ordering the same approved and homologated after its amendment to include therein (1) the claim of Charles J. Rivet and Louis H. Yarrut in the sum of $17,500 for legal services rendered as attorneys for the liquidator from December 31, 1937, to September 6, 1940, subject to a credit of $2,145.20, or $15,-354.80; and (2) the claim of William E. Wood in the amount of $6,900, for his services as special agent for the liquidator from December 31, 1937, to August 6, 1940. He is also appealing from two judgments dismissing the suits instituted by him against these same parties to have annulled

and set aside the judgment rendered by the late Hugh C. Cage, Judge of Division "A" of the Civil District Court for the Parish of Orleans, on April 13, 1938—under which Rivet and Yarrut were awarded $43,622 for the legal services rendered the liquidator from February 5, 1937, to December 31, 1937, and Wood was awarded $21,811 for his services as special agent during the same period—and to recover from them the amounts awarded under that judgment, subject to a credit for the amount the liquidator estimates should have been paid them, $5,000 to Rivet and Yarrut and $1,100 to Wood. Jasper H. Brook, the former liquidator, was also made a party to these proceedings, although no relief by way of judgment was sought against him.

On January 29, 1937, Brock, the then State Bank Commissioner and Supervisor of Homestead and Building and Loan Associations, predecessor of the appellant in this case, proceeding under Section 67 of Act No. 140 of 1932, as amended by Act No. 44 of the Second Extra Session of 1934, placed the Phoenix Building and Homestead Association, along with others, in liquidation. During its liquidation, four accounts have been filed, the first on July 16, 1937, under which full paid in stock shares of the Globe Homestead Association in the amount of $1,531,600, acquired in exchange for certain assets of the Phoenix association, were distributed ratably among the shareholders, the attorneys and special agent withholding the charges due them for their services in order that the distribution of these shares among the stockholders of the association might be expedited. On

March 31, 1938, the second account was filed covering the period from February 5, 1937, when Brock was confirmed as the liquidator, to December 31, 1937, whereunder, in addition to the shares in the Globe Homestead Association already referred to, $11,487 was distributed to shareholders and $199,770.79 to creditors, including the sum of $43,622 to the attorneys and $21,811 to the special agent. Under the third account, filed on January 18, 1940, and covering the period from January 1, 1938, to December 31, 1939, neither the attorneys nor the special agent received any amount for the services rendered by them during this period, for the reason, as stated in the account, "that these fees have not been fixed, and for the further reason that no tableaux of distribution is included in this periodical account." All three of these accounts were duly advertised and homologated by judgments of the court.

Subsequent to the filing of the third account and prior to the filing of the fourth, Brock was succeeded by Begnaud and he, in turn, appointed Ambrose Smith as the successor to Wood on August 6, 1940, and Gamble & Gamble as successors to Rivet and Yarrut on September 6, 1940. These new officers filed the fourth account on June 17, 1941, under which they proposed to distribute the second liquidating dividend, equal to 5% of the original paid-in values of the shares held by stockholders, or the sum of $117,808.44. Since no provision was made in this account for paying the claims of Rivet and Yarrut for the legal services rendered by them from December 31, 1937, to September 6, 1940, and the

claim of Wood for his services as special agent from December 31, 1937, to August 6, 1940, they all opposed the account, stipulating in their oppositions the services rendered and the amount of their fees, based upon the $249,042.60 in the hands of the agent and available for distribution during that period. Begnaud then filed with the Clerk of Court a document wherein he sought to have the judgment of April 13, 1938, under which Rivet and Yarrut were paid $43,622 for their legal services over the period from February 5, 1937, to December 31, 1937, and Wood was paid the sum of $21,811 for the same period, annulled and set aside and the fees thus granted reduced to $5,000 in the case of Rivet and Yarrut and $1,100 in the case of Wood, and to recover $40,310 from Rivet and Yarrut and $20,711 from Wood as excessive fees for the year 1937. Under this document Begnaud also sought to have the claim of Rivet and Yarrut for fees from December 31, 1937, to September 6, 1940, in the amount of $17,500 reduced to 10% thereof and the claim of Wood for $6,900 reduced in the same proportion.

The liquidator's resistance to the claims of the attorneys and the special agent is predicated upon the contention that they are not entitled to any additional compensation for their services to the Phoenix association during the period from December 31, 1937, to August 6 and September 6, respectively, of 1940, because the fees already paid them in connection with their services to this association during 1937 were not only adequate but so excessive as to require a refund of the excessive por-

tion, particularly in view of the fact that during the same period they were employed and receiving proportionately excessive fees in connection with the liquidation of several other homesteads.

These documents, termed answers, actions in nullity, and reconventional demands, having been stricken from the record upon the motion of the opponents and a judgment rendered in their favor on the merits, the liquidator then filed, under these same liquidation proceedings, separate suits against the attorneys and the special agent, seeking to attack on the same grounds via direct action the validity of the judgment of April 13, 1938. When these suits were dismissed, the liquidator appealed from the judgments, consolidating the cases here for purposes of argument, as he also did in appealing from the judgments rendered on the oppositions. Inasmuch, however, as the same issues raised in the direct actions of nullity were sought to be injected into the oppositions and are so germane to the decision on the oppositions, we will here treat the four cases as one.

Unless the appellant's contention that the judgment of April 13, 1938, cannot form the basis of a plea of res judicata because it is not a final judgment and is subject to attack and revision at any time is correct, the decisions of this court in the cases of In re Ætna Homestead Association, 199 La. 929, 7 So.2d 188, and In re Tulane Homestead Association, 202 La. 221, 11 So.2d 536, holding that the fees paid these same attorneys and the same special agent by other homesteads could not preclude or have any bearing on their recov-

ery for services rendered in the liquidation of the Ætna and Tulane homesteads because all of the associations were liquidated separately and not jointly, as well as our decision in the case of In re Liquidation of Thrift Homestead Association, 202 La. 309, 11 So.2d 599, holding that the fees to be paid Rivet, Yarrut, and Wood were to be computed on the basis of the amount available for distribution during the current period and not on the distributions made during any prior period, are controlling here, and the judgment of April 13, 1938, is binding on all parties at interest, subject to the action of nullity as prescribed by the Code of Practice, Articles 604–613 inclusive. Also controlling here is the holding that the amount awarded Rivet, Yarrut, and Wood in the Ætna case [199 La. 929, 7 So. 2d 191] could not be reduced by us where the liquidator offered "no testimony at all to contradict the testimony offered by plaintiffs in rule as to the value of the services rendered," particularly in view of the fact that these fees were fixed by the judge who had supervision over the progress of the liquidation from its inception and was thus better able to observe and value the services rendered. "Clearly," stated this court in the Ætna case, "under the circumstances, we cannot disturb the judgment rendered by the trial court."

It is the contention of counsel for the appellant that the judgment of April 13, 1938, homologating the account which fixed the fees of the appellees for services rendered the Phoenix association by them during the year 1937 did not have the force and effect of a thing adjudged, for the rea-

son that it was not a definitive judgment but a mere administrative act of the district judge in connection with the liquidation of this homestead, as authorized by a special statute. It is counsel's argument that when the legislature of 1934 adopted its Act No. 44 at its Second Extra Session, amending and re-enacting Section 67 of Act No. 140 of 1932, it deleted therefrom the provision requiring that its assets could only be distributed after such proposed distribution had been filed, published, and homologated "as provided for the distribution of successions or estates under administration in this State," and authorized the disbursement of such funds upon the simple approval of the judge, this approval amounting to no more than an ex parte order.

It has been repeatedly held by this court since its decision in the case of Dussuau's Syndics v. Bredeaux, 4 Mart., O. S., 450, in 1816, and has that long been the settled law of this state, that judgments homologating accounts are final and have the authority of the thing adjudged. Louisiana Insurance Co. v. Campbell, 6 Mart., N.S., 131; Mayfield v. Comeau, 7 Mart., N.S., 180; Kirkland v. His Creditors, 2 La. 205; Huntstock v. His Creditors, 11 La. 569; Ory v. His Creditors, 12 La. 121; Lang v. Their Creditors, 14 La. 241; Gardiner v. Brashear, 9 Rob. 61; Allinet v. His Creditors, 15 La.Ann. 130, 132; In re Succession of Conrad, 45 La.Ann. 89, 11 So. 935; Searcy & Co. v. Their Creditors, 46 La.Ann. 376, 14 So. 910; Succession of Allen, 49 La.Ann. 1096, at page 1111, 22 So. 319; Succession of Rabasse,

50 La.Ann. 746, 747, 23 So. 910; and Woodward, Wight & Co. v. National Box Co., 168 La. 701, 123 So. 296, 298. In the latter case this court said: "In so far as a judgment approving a provisional account of a receiver determines specifically the rights of the creditors, or of any one of them, it becomes res judicata, and the issue so determined cannot be reopened by way of opposition to a subsequent account rendered by the receiver."

The object and purpose of amending Section 67 of Act No. 140 of 1932 was, as expressed in the title of Act No. 44 of the Second Extra Session of 1934, "to grant new and greater powers to the State Bank Commissioner and Supervisor of Homestead and Building and Loan Associations under Section 67 with reference to the closing and liquidation of said institutions," and in order to carry out this object, the legislature saw fit to authorize the supervisor or liquidator on the order of and subject to the approval of the district court to fix the compensation of the special agent, counsel, clerical assistance, and other necessary expenses of liquidation and distribution, and to pay such fees "out of the funds of such association, society or company in his hands," by preference upon the approval of the judge. He was likewise authorized to release, compromise or otherwise settle all debts or claims due to or by the corporation, sell its real property, and perform other such acts of administration under a similar procedure. But in thus facilitating prompt administrative action in the closing and liquidation of such institutions by relieving the liquidator of the necessity of pro-

-ceeding through the former channel of filing a tableaux and having the same homologated before performing the most simple of tasks, the legislature did not ·contemplate or thereby intend that the liquidator's responsibility and obligation of periodically or finally accounting for his administration was forever dispensed with.

.This interpretation was placed on Act No. 44 of the Second Extra Session of 1934 not only by the former liquidator, his attorneys, and the five judges of the Civil District Court for the Parish of Orleans, but also by the present liquidator and his .attorneys, for, in filing the petition ˙with this fourth account, the one here being opposed, the liquidator prayed, "that notice of the filing of said account be published according to law, and that, in due course, the same account be approved and homologated, and the funds be ordered distributed in accordance therewith," and the judge signed the order to that effect.

For us to hold otherwise would mean that the accounts of any and all liquidators of homestead associations in this state, as well as all items thereon, whether involving distribution of assets, payment of ·claims, or sales of real estate, would for·ever be open to constant attack upon the mere whim of interested parties or suc·ceeding public officials, rendering the finality of any act on the part of the liquidator absolutely impossible without involved and protracted litigation. This was clearly not the intention of the legislature, for in the amending act we find the limitation that ¬within six months from the rejection of ¬any claim by the liquidator, the interested party might resort to the courts for the recognition of such claim.

█ It is our conclusion, therefore, that the judgment of April 13, 1938, homologating the account filed by the liquidator, and duly advertised, wherein the fees of the attorneys for 1937 were fixed at $43,-622 and those of Wood at $21,811, was a final judgment within the meaning and contemplation of Article 2286 of the Revised Civil Code and Article 539 of the Code of Practice. Consequently, the trial judge properly ordered stricken from the record those documents (collaterally attacking such judgment) filed by the appellant following the oppositions of the appellees.

In the direct actions of nullity, in addition to the ground just disposed of, the. appellant alleged that the judgment should be annulled for the further reasons that (1) the fees paid Rivet, Yarrut, and Wood were not earned, (2) they were allowed by Brock through error because of the inflated representations of the appellees, and (3) if not paid in gross error, then, he further alleged, without stating the facts upon which such allegation was based, that the same constituted a gross fraud, waste, and misfeasance, from which the attorneys and ˙special agent benefited, and the judge's approval thereof was, therefore, inadvertently and improvidently granted.

The causes for which a judgment may be annulled and set aside are stated in Article 605 of the Code of Practice to be two-fold, viz.: Those relative to the form of the proceeding and those appertaining to the merits of the question tried. The

vices in form, not at issue here, are listed in Article 606, and, in Article 607, it is declared: "A definitive judgment may be annulled in all cases where it appears that it has been obtained through *fraud, or other ill practices on the part of the party in whose favor it was rendered,*" the examples of such fraud and ill practices given in the article being the bribery of the judge or the witnesses, the producing of forged documents, and the denial that payment was received where the receipt therefor was, at the time, lost or misplaced and subsequently found. (Italics ours.)

It is so well settled that it requires no citation of authorities that a mere conclusion of the pleader, unsupported by any facts, fails to disclose a cause or right of action. Consequently, since the liquidator failed to allege any facts upon which he based his conclusion that the judgment of April 13, 1938, was obtained through fraud or ill practices, it is our opinion that his petition failed to disclose a cause or a right of action and was properly dismissed by the trial judge.

It is the argument of counsel for the appellant, however, strenuously put forth orally and in their original and supplemental briefs, the latter consisting of 75 pages and filed since this opinion was written, that the fee of $17,500 allowed Rivet and Yarrut for their services as attorneys for the liquidator from December 31, 1937, to September 6, 1940, are so excessive and unreasonable that despite the fact the liquidator offered no evidence in the lower court to counteract the detailed and explanatory testimony of Rivet as to

the services performed by him and Yarrut and their value, and corroborated by three reputable and experienced attorneys of the New Orleans Bar—Ralph Swartz, John E. Jackson, and George S. Guion—this "Court itself must conscientiously inspect and value such services; and not shift that burden to members of the bar who file into Court and testify in claimant's behalf."

As previously pointed out, we held in the Aetna case that where the liquidator offered no testimony at all to contradict the testimony offered by the opponents of the account as to the value of their services, we would not disturb the judgment rendered by the trial judge. This is particularly true with respect to the attorneys, for it is shown that the fee allowed them is in keeping with the minimum fee fixed by the New Orleans Bar Association in the administration of successions and with the jurisprudence of this state. Under these circumstances we cannot say that the fees fixed by the trial judge in the instant case are either excessive or unreasonable.

The same may be said with respect to the fee of $6,900 allowed Wood for the period from December 31, 1937, to August 6, 1940, for although counsel for appellant stressed in particular throughout their oral and written arguments that Wood was receiving a salary of $500 a month as assistant supervisor of homestead associations during the time he was employed as the special agent, we fail to find that any such allegation was made in the liquidator's pleadings or that it is supported by any evidence. See the holding in In re

Tulane Homestead Association, 202 La. 221, 11 So.2d 536, on this same issue.

For the reasons assigned, the judgment of the lower court maintaining the oppositions to the liquidator's account, and amending it by allowing the fees claimed by opponents, and the judgments of the lower court dismissing the liquidator's actions of nullity, are affirmed at appellant's cost.

ODOM, J., absent.