Mrs. Eulicie (or Eulice) Bee BORNE,
etc., et al., Appellants,

v.

LA TERRE COMPANY, Inc., Appellee.

No. 15043.

United States Court of Appeals
Fifth Circuit.

May 13, 1955.

James Gibson Tucker, Jr., and Tucker & Schonekas, New Orleans, La., for appellants.

J. B. Miller, New Orleans, La., Milling, Saal, Saunders, Benson & Woodward, New Orleans, La., of counsel, for appellee.

Before HUTCHESON, Chief Judge, HOLMES, Circuit Judge, and DAWKINS, District Judge.

DAWKINS, District Judge.

Appellee, plaintiff below, brought this suit for declaratory judgment recognizing it as owner of certain described land in Lafourche Parish, Louisiana, and seeking to have nullified and cancelled from the conveyance records of that parish certain instruments relating to a portion of the property. Joined as defendants were appellants, who are the heirs of Achille and Delphine Callais Lee or their descendants. Appellants answered, denying appellee's claim of ownership and asserting that they were the owners of a described portion of the property by virtue of "actual, physical, open and notorious possession * * * from about the year 1909 to the present time to the exclusion of all others."[1]

Appellee then filed a motion for summary judgment which, in effect, took the position that the possession, if any, of appellants and their ancestors had been interrupted by injunction suits previously filed and therefore could not have been "continuous and uninterrupted" within the meaning of Article 3500 of the LSA–Civil Code.[2] Attached to the motion were affidavits, certified cop-

---

1. *Art. 3475*, LSA–Civil Code: "Immovables are prescribed for by thirty years without any title on the part of the possessor, or whether he be in good faith or not."

*Art. 3499:* "The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith."

2. "The possession on which this prescription is founded must be continuous and uninterrupted during all the time; it must be public and unequivocal, and under the title of owner."

ies of documents upon which appellee relied for its title and exhibits from the injunction proceedings referred to therein. Appellants filed counter-affidavits contradictory to some of the particulars as alleged in appellee's motion and further asserting the claims of possession. The trial judge, without opinion, granted the motion and entered judgment for appellee as prayed for, presumably upon the grounds that the prior injunction proceedings amounted in law to interruptions of any possession in appellants and their ancestors and thereby prevented the full accrual of the necessary prescriptive period. The appeal from that judgment raises two questions: (1) was the possession of Achille Lee interrupted by the filing and prosecution of the injunction suits? and (2) if so, did that interruption operate against the community interests of Delphine Callais Lee?

From the pleadings, affidavits and attached exhibits the following undisputed[3] facts may be gleaned: appellee is the record owner of a tract of land in Sections 17, 18, 19 and 20, Township 20 South, Range 22 East, Southeastern Land District of Louisiana, West of the Mississippi River; but the real dispute is concerned with a small tract having a frontage along Bayou Lafourche of approximately 22½ arpents, a portion of which is situated in Sections 19 and 20, being the land claimed by appellants. Achille Lee entered the small tract of land about 1909 and he and his wife, or their descendants, had been in possession thereof since that time (see footnote 3), though without color of title. Fur trapping was profitable in this area, and "trapping wars" broke out between persons or firms deriving trapping rights from the record owners of the land and those who contended for "natural" rights to trap there.

In November, 1922, Delaware-Louisiana Fur Trapping Co., Inc., filed a proceeding in equity in the Federal District Court for the Eastern District of Louisiana, Equity No. 17,129, against Pizani and others, and among the defendants were Achille Lee and other ancestors of appellants.[4] The plaintiff in that action alleged itself to have been in possession of the property for more than one year,[5] setting forth its claim as lessee of the record owner, and sought an injunction preventing the defendants

3. In the trial court, appellee objected to statements in appellants' pleadings and affidavits concerning the nature and extent of their possession on the ground that such statements constituted legal conclusions rather than allegations of fact. While we are inclined to think there was considerable merit in this position, the view we take makes a decision on this point unnecessary; and we assume for the purposes of this opinion that appellants and their ancestors possessed the property physically, openly and unequivocally as owners during the periods before and after the pendency of the injunction suits.

4. This proceeding will be referred to hereinafter as the Pizani suit.

5. With respect to possession, the plaintiff alleged: "Said lands hereinabove described have ever since their acquisition by the above mentioned owners been duly and regularly assessed for taxes in their respective names, and said owners, either themselves or through their agents, lessees and licensees have been in *actual* and civil *possession* thereof ever since their acquisition, and there has been *no adverse possession* or adverse title thereto in anyone else.

\* \* \* \* \*

"That plaintiff ever since the leases to it of the premises aforesaid, as hereinabove recited, and the predecessors in title and possession of plaintiff ever since their respective acquisitions of said properties above set forth, each through their respective agents, officers, tenants and licensees, have been and *are in the quiet, peaceable, actual, physical and civil possession* of all of the lands hereinabove described and covered by the leases aforesaid, and have occupied and utilized said lands to the full extent that the nature and character of the land would permit. Plaintiff shows that there are on said lands a church, general merchandise stores, warehouses for furs, a shipyard; that on parts of said lands there are families living by license of plaintiff, many of whom raise hogs, poultry and cattle on said land." (Emphasis supplied.)

therein from trespassing and trapping upon a large tract of land, including a portion of the property in dispute here. A temporary restraining order was granted November 9, 1922, recognizing plaintiff's possession and restraining the defendants from entering upon the property or otherwise interfering with the plaintiff's possession. Answer was filed in March, 1923, by many of the defendants, including Achille Lee and other ancestors of appellants, denying the plaintiff's possession and alleging that the lands had been open to the public for trapping for more than one hundred years. After due proceedings were had, a final decree was entered on November 23, 1923, enjoining Achille Lee and other ancestors of appellants from trapping upon the property there involved or otherwise interfering in any manner with the full and quiet possession of the plaintiff in that suit.

In October, 1924, the same plaintiff filed a similar suit (Equity No. 17,759) against Armstrong and others, including Achille Lee and other ancestors of appellants, seeking a similar injunction with respect to other lands, including a portion of the property involved here.[6] The complaint contained allegations of possession very similar to those in the Pizani suit. (See footnote 5.) A temporary restraining order was granted on October 29, 1924, recognizing the plaintiff's possession "for a number of years past", and restraining the defendants from entering upon the property or otherwise interfering with the plaintiff's possession. A supplemental bill of complaint was filed in this suit on June 7, 1926, in which Achille Lee and other ancestors of appellants were also named defendants, and ultimately a permanent injunction was issued on October 13, 1928.

As a result of these two injunctions Achille Lee and many other persons, some of them being the same persons or the ancestors of the persons who are appellants here, were cited for contempt,

personally served and some of them were punished.

## I.

### Interruption of Achille Lee's Possession.

■ In approaching the solution of this problem it is necessary to relate certain settled principles of Louisiana law which point up the controversy involved here. Article 3500 of the LSA–Civil Code requires that the possession upon which appellants rely must be continuous and uninterrupted for the entire statutory period—thirty years in this case since appellants have no color of title upon which to base a claim of good faith prescription. The prescriptive period is subject to "natural interruption" and "legal interruption." Article 3516. A natural interruption occurs "when the possessor is deprived of the possession of the thing during more than a year, either by the ancient proprietor or even by a third person." Article 3517. Article 3518 provides: "A legal interruption takes place, when the possessor has been cited to appear before a court of justice, on account either of the ownership or of the possession; and the prescription is interrupted by such demand, whether the suit has been brought before a court of competent jurisdiction or not." A special statute, LSA–R.S. 9:5801, provides: "The filing of a suit in a court of competent jurisdiction shall interrupt all prescriptions affecting the cause of action therein sued upon, against all defendants, including minors and interdicts." When a suit brings either the codal article or the special statute into effect, the interruption continues throughout the pendency of the action, and a completely new prescriptive period begins at the termination of the suit. Turner, Wilson & Co. v. McMain, 29 La. Ann. 298; B. J. Wolf & Sons v. New Orleans Tailor-Made Pants Co., 110 La. 427, 34 So. 590; South Arkansas Lumber Co. v. Tremont Lumber Co., 146 La. 61, 83 So. 378; Stroud v. Standard Oil Co., La.App., 41 So.2d 539.

---

6. This proceeding will be referred to here in after as the Armstrong suit.

Achille Lee died in 1931, twenty-two years after he entered upon the property in 1909, and appellants claim one-half interest in the property as his heirs. They do not dispute that under LSA–R.S. 9:-5801 the filing of the present suit interrupted any prescription not already accrued, and it was filed on April 16, 1953, twenty-two years after Lee's death. It is seen that neither Lee nor his heirs could have possessed uninterruptedly for thirty years in their own right, so it is necessary for the present appellants to tack their own possession onto that of their ancestors to show a continuous period of thirty years prior to the filing of this suit, or since April 16, 1923. Therefore, it is clear that if the Pizani and Armstrong injunction suits operated to interrupt Achille Lee's possession, the appellants have no claim to the property as his heirs since both suits were pending after 1923.

Appellants do not dispute the propositions just stated. Rather, they contend that the injunction suits did not have the effect of interrupting prescription because they were personal actions by a trapping lessee against Lee himself and could not affect the real rights of ownership and possession of the property. They further contend that the only purpose of the injunctions was to prevent Lee from conspiring with others wrongfully to interfere with the plaintiff's trapping rights, not to assert a claim of ownership adverse to Lee's. They rely exclusively upon Gulf Refining Co. of Louisiana v. Glassell, 186 La. 190, 171 So. 846, wherein the Supreme Court of Louisiana held that a lessee of the landowner had only a personal right and had no standing in law to bring a petitory or other real action [7] involving ownership or possession of immovable property.

We agree with appellee, which urges in its brief that we need not be concerned with the "interesting but involved" question of whether or not the injunction suits were personal or real, nor are we concerned with the purpose of the suits. We are called upon to determine the *effect* of those suits on the possession of Achille Lee. Whether or not the plaintiff therein was legally entitled to do so, it brought the suits and alleged that it was the trapping lessee of the *legal owners* of the lands therein described and, as such, had been in *possession* of the property for more than a year. These allegations were denied in the answers filed, but no question was raised as to plaintiff's capacity to sue. The final decrees, issued in contested proceedings, recognized the plaintiff's possession and enjoined Achille Lee and others from entering the property and interfering with plaintiff's peaceable possession. Insofar as this record shows, the decrees were never appealed nor were they otherwise directly attacked. They became final and binding upon Lee and his heirs, and were in fact enforced against him. Hence, we may not speculate as to what the effect on the ultimate results would have been if the principles reviewed in the Glassell case had been asserted in defense of the injunction suits. The adjudication of possession adverse to Lee's is binding upon us, Miller v. Albert Hanson Lumber Co., 134 La. 225, 63 So. 883, since the validity of a judgment rendered by a court of competent jurisdiction may not be collaterally attacked. King v. Hester, 5 Cir., 200 F.2d 807; Folse v. St. Bernard Police Jury, 201 La. 1048, 10 So.2d 892; In re Phoenix Building & Homestead Ass'n, 203 La. 565, 14 So.2d 447; Public Loan Corp. v. Adams, La.App., 66 So.2d 6.

7. "Petitory" actions, or those brought to assert ownership of immovable property, and "possessory" actions, or those brought to protect legal possession of such property, are classified in Louisiana as "real actions." The former can be brought only by one claiming legal rights of ownership in the property; and possessory actions can be brought only by one whose claim to possession is derived from some right of ownership (as distinguished from personal rights of use or occupancy derived from the owner). See Louisiana Code of Practice, Articles 4–6, 41–60.

It is evident that the plaintiff in those suits was asserting rights of possession derived from the legal owner and that Lee's unlawful invasion of those rights was the point at issue. We think it clear that the decrees furnish proof of a natural interruption within the meaning of Article 3517 of the LSA–Civil Code. Further, we are of the opinion that the suits asserted rights which were contradictory and adverse to Lee's possession of the property and that he was therefore "cited to appear before a court of justice, on account * * * of the possession" within the meaning of Article 3518. We hold that the injunction suits interrupted Lee's possession and prevented the accrual of thirty years acquisitive prescription.

## II.

### Effect on the Community Interest of Mrs. Delphine Callais Lee.

■ Basing their reasoning upon their contention that the injunction suits were merely personal actions against Lee for tortious conduct on his part, appellants argue that Mrs. Lee was not cited therein and that the suits could have no effect upon her community interest in the property. Thus, they urge, even if the suits interrupted Lee's possession, they are the owners of one-half interest in the property through inheritance from Mrs. Lee.

■ We cannot agree. In asserting an inherited interest from Mrs. Lee, appellants are required to rely upon the rule that property acquired by prescription during the marriage falls into the community. Crouch v. Richardson, 158 La. 822, 104 So. 728. Mrs. Lee could not have acquired a possessive interest apart from the community, for a wife cannot prescribe against the community during the marriage. McGill v. Urban, 10 La.App. 82, 120 So. 408. In Louisiana, the husband is head and master of the community, LSA–Civil Code, Article 2404, and he is its only legal representative in suits by or against the community. Mitchell v. Dixie Ice Co., 157 La. 383, 102 So. 497; Smith v. Brock, La.

App., 200 So. 342; Cutrer v. Spring, La. App., 4 So.2d 106; Anderson v. Edmondson, La.App., 8 So.2d 131; Walet v. Jefferson Lake Sulphur Co., 5 Cir., 202 F.2d 433.

We have held that the injunction suits involved Lee's possessive rights in the property. In view of the principles just discussed, it follows that Lee's possession was that of the community existing between him and Delphine Callais Lee and that the suits interrupted prescription as to both members of that community.

Affirmed.