138 So.2d 252 (1962)
Chet ALLEN, Plaintiff-Appellant,
v.
COMMERCIAL NATIONAL BANK IN SHREVEPORT, Defendant-Appellee.
No. 9661.
Court of Appeal of Louisiana, Second Circuit.
January 31, 1962.
Rehearing Denied March 7, 1962.
Certiorari Granted April 19, 1962.
*253 Charles M. Peters, Roy B. Tuck, Jr., Hugh T. Ward, Shreveport, for appellant.
Cook, Clark, Egan, Yancey & King, Shreveport, for appellee.
Before GLADNEY, AYRES and BOLIN, JJ.
AYRES, Judge.
This is an action primarily to annul a judicial sale by executory process of three *254 lots or parcels of real estate, and, secondarily, to restrain and enjoin defendant from interfering with plaintiff's possession of one of those lots and the residence thereon. From a judgment sustaining an exception of no cause of action and holding as moot the question relating to plaintiff's possession, plaintiff has appealed.
The facts as disclosed by plaintiff's petition, which we are required to accept as true in giving consideration to an exception of no cause of action, are, briefly stated, that plaintiff was indebted unto the defendant in the principal sum of $28,152.98, plus interest and attorney's fees, represented by plaintiff's promissory notes. In order to secure this indebtedness, plaintiff executed and pledged to the defendant three mortgage notes, two of which were in the sum of $16,000.00 each and the other in the sum of $20,000.00, aggregating, altogether, $52,000.00. Each of these notes was separately secured by a mortgage on one of the aforesaid lots.
During July, 1961, defendant herein, as the pledgee of the aforesaid mortgage notes, proceeded, by executory process, to have the property seized and sold to pay the plaintiff's indebtedness. Three separate suits were filed, one on each note. Each action was directed against the particular lot mortgaged to secure the note therein sued upon. Three separate writs of seizure and sale were issued. Each lot was accordingly separately seized and advertised for sale to pay the mortgage resting against it. The writs of seizure and sale directed that the sales be made for the aggregate sum of $52,000.00, the face amount of the pledged notes, plus interest and attorney's fees. Demands for payment in the amount of each of the pledged notes were made.
However, prior to the sales, plaintiff herein, as the debtor and as the defendant in said foreclosure suits, sought, in the trial court, what he termed "appropriate injunctive relief," which was allegedly granted in a judgment ordering that the three writs be combined and reduced to the sum actually owed by plaintiff herein to the defendant herein, that the three separate properties be sold altogether, or in "globo," and that the sale be proceeded with as scheduled.
No further opposition to the sale was made, nor was any objection raised to the validity of the judgment reducing the writs to the amount actually owed or ordering and directing the sale altogether, or in "globo," or that the sale be proceeded with as scheduled. No appeal was taken from the judgment nor was any application for writs of certiorari made so that the correctness of the judgment might be inquired into. The sale of the property was accordingly proceeded with under the terms and provisions of the judgment rendered in an action invoked by the debtor contradictorily with the creditor.
In deference to the proceedings instituted by defendant via executiva, it may be pointed out that the proceedings wherein the pledgee sought to collect the full amount of the pledge, which exceeded the actual advances or indebtedness, were in accordance with the provisions of LSA-C.C. Art. 3170, as well as the pronouncements in the jurisprudence. This codal provision provides:
"If the credit which has been given in pledge becomes due before it is redeemed by the person pawning it, the creditor, by virtue of the transfer which has been made to him, shall be justified in receiving the amount, and in taking measures to recover it. When received, he must apply it to the payment of the debt due to himself, and restore the surplus, should there be any, to the person from whom he held it in pledge."
It has been specifically held that the pledgee of a mortgage note may recover the full amount of the pledge subject to the obligation of accounting to the debtor for any excess over and above the actual indebtedness. Mechanics' & Traders' Ins. *255 Co. v. Lozano, 39 La.Ann. 321, 1 So. 608; Bass v. Biggs, 167 La. 126, 118 So. 861.
Nevertheless, injunctive process is available to the debtor to prevent or prohibit the collection by a pledgee via executiva of more than is due on a mortgage obligation. Spiro v. Richardson, 240 La. 192, 121 So.2d 741; Sample v. Elliott, 155 La. 941, 99 So. 705, 706; Crowley Bank & Trust Co. v. Hurd, 137 La. 787, 69 So. 175; Whitney-Central Trust & Savings Bank v. Sinnott, 135 La. 785, 66 So. 222.
Also, preliminary to a discussion of the issues presented for resolution, it may likewise be pointed out that a proper proceeding to obtain the annulment of a judicial sale, because of informalities and irregularities connected therewith which render title to the property sold therein voidable, is a direct action of nullity against the parties to the transaction. Reid v. Federal Land Bank of New Orleans, 193 La. 1017, 192 So. 688, 690; Long v. Chailan, 187 La. 507, 175 So. 42; Gandy v. Caldwell, 169 La. 870, 126 So. 221; Richardson v. McDonald, 139 La. 651, 71 So. 934.
However, the exception of no cause of action is directed herein not to the informalities and irregularities such as relate to the demand for payment or to the advertisements preceding the sale but is directed to the effect of the judgment rendered prescribing the manner and method in which the sale must be made and directing that the sale proceed as scheduled. The court, of course, was a competent court with jurisdiction of the subject matter as well as of the parties concerned. Pursuant to that judgment, a sale of the property was made to the Commercial National Bank in Shreveport as purchaser.
The validity or legality of the judgment is not herein directly assailed nor attacked upon any ground or for any reason whatsoever. This action, directed only to the nullity of a sale held and conducted pursuant to a judgment of court, is an indirect and collateral attack upon the judgment itself.
Ordinarily, absence of a proper demand for payment in a proceeding or of advertisements of the property for sale is an informality or irregularity sufficient to support an action of annulment of a sale in a proceeding by executory process. However, the principle is well settled in the jurisprudence of this State that matters once determined by a court of competent jurisdiction, if the judgment has become final, can never again be called into question by the parties or their privies, though the judgment may have been erroneous and liable to certain reversal on appeal or on a review under writs of certiorari. Heroman v. Louisiana Institute of Deaf and Dumb, 34 La.Ann. 805; California Company v. Price, 234 La. 338, 99 So.2d 743; Pitts v. Neugent, 187 La. 694, 175 So. 460; Buillard v. Davis, 185 La. 255, 169 So. 78; Metropolitan Bank v. Times-Democrat Pub. Co., 121 La. 547, 46 So. 622; Fouchaux v. Board of Commissioners, La.App. Orleans, 1953, 65 So.2d 430.
No contention is made that the judgment directing the sale of the property was not perfectly legal and binding at the time the sale was made. This is particularly true in that no attack whatever is made upon the judgment itself, except indirectly through the attack upon the sale directed and authorized by the judgment. This, as heretofore stated, is a collateral attack upon the judgment itself.
The rule is well established that a judgment rendered by a court having jurisdiction of the parties and the subject matter, unless reversed or annulled in some proper proceeding, is not open to contradiction nor impeachment in respect to its validity, verity, or binding effect by the parties thereto or their privies in any collateral action or proceeding. In re Phoenix Building & Homestead Ass'n, 203 La. 565, 14 So.2d 447; Folse v. St. Bernard Parish *256 Police Jury, 201 La. 1048, 10 So.2d 892; Weil v. Schwartz, 51 La.Ann. 1547, 26 So. 475; Equitable Securities Co. v. Bloch, 51 La.Ann. 478, 25 So. 271; Starnes v. Hadnot, 42 La.Ann. 366, 7 So. 672; Kent v. Brown & Learned, 38 La.Ann. 802; State ex rel. Mestayer v. Debaillon, 36 La. Ann. 828; Succession of Quin, 30 La.Ann. 947; Borne v. La Terre Company, 5th Cir., 1955, 222 F.2d 453, 457; King v. Hester, 5th Cir., 1952, 200 F.2d 807; 49 C.J.S. Judgments § 401, p. 792.
In the Debaillon case, it was stated, as quoted later in the Folse case, that
"No principle of law has received greater and more frequent sanction, or is more deeply imbedded in our jurisprudence, than that which forbids a collateral attack on a judgment or order of a competent tribunal, not void on its face ab initio."
It would appear extremely illogical to say that the judgment rendered in the three consolidated foreclosure proceedings is final and binding on the parties and cannot be annulled except by a direct action, but that a sale pursuant to its directive may be annulled on the grounds of the incorrectness of the judgment itself. We thus hold that the instant action constitutes a collateral attack upon the judgment directing and authorizing the sale of plaintiff's property and that, as such, it cannot be maintained. Thus, plaintiff's petition discloses no cause of action.
Nor do we find any basis for reversal of the judgment holding that plaintiff's action for an injunction to prohibit defendant from interfering with plaintiff's possession of one of the lots sold, was moot. No serious contention has been made to the contrary. However, prior to the hearing and entry of the judgment complained of, the defendant was placed in possession of the property concerned. The object of the injunction sought was to prevent defendant's being placed in possession of the property. Injunctions of this character necessarily operate on unperformed and unexecuted acts and prevent a threatened but nonexistent injury. They cannot be used to redress a consummated wrong or undo what has already been done. Reynaud v. Songy, Orleans, 1929, 14 La.App. 318, 124 So. 684; Forrest v. Messenger, La.App.2d Cir., 1945, 20 So.2d 766.
In the latter case,
"It was established on trial of the rule that the building involved herein had been completely demolished and the material removed from the land. In view of this situation, appellant makes the point that no good purpose would or could be subserved by issuance of injunction prohibiting him from doing something that has already been done; that could not restore the status quo ante. In effect he argues that the matter is now moot. The point is well taken. It would be a vain and idle thing, as argued, for a court, in such circumstances, to issue an injunction. Nothing could be accomplished by so doing. The jurisprudence of this state well supports the principle which, tersely stated, is that:
"`Rights already lost and wrongs already perpetrated cannot be corrected by injunction.' See: Adams v. Town of Ruston, 3 La.App. 188, and other cases therein cited; Dunham et al. v. Town of Slidell, 133 La. 212, 62 So. 635; Trevigne v. School Board, 31 La. Ann. 105." See, also, 43 C.J.S. Injunctions § 4, p. 408.
Thus, the principle is established in the jurisprudence that, if an act sought to be enjoined has already been committed, there is no ground for an injunction. The purpose of an injunction is to prevent and not to correct wrongs. Callan v. Board of Com'rs of Fire Department, 45 La.Ann. 673, 12 So. 834; West Carroll National Bank of Oak Grove v. West Carroll School *257 Board, La.App. 2d Cir., 1962, 136 So.2d 699.
For the reasons assigned, the judgment appealed is hereby affirmed at plaintiff-appellant's cost.
Affirmed.