ROGERS, Justice.
 

 The relator, Interstate Trust & Banking Company, a banking association ^organized under the laws of this state and domiciled in New Orleans, is made defendant in a suit by the respondent, Charles H. Hiern, for the forfeiture of defendant’s charter, the appointment of liquidators, and for the recognition of plaintiff as a depositor in the sum of $1,-508.52.
 

 Charles H. Hiern alleged in his petition that he has on deposit in the defendant bank $1,508.52 in a cheeking account, withdrawable on demand. That for more than five months past the defendant has failed and refused to pay his deposit and its other demand obligations. That the cash value of the assets of defendant, at a reasonable valuation, are insufficient, to meet its obligations. That an examination of the defendant bank made about April, 1932, by the Federal Reserve Bank and the state bank commissioner, or by one of the two, showed that the defendant bank was insolvent, or that its surplus, undivided profits, reserves, etc., had been wiped out and its capital reduced to approximately $150,000. That the president of the bank admitted to its directors and to others that he had received the report of such examination. That the officers of the defendant have during the past six months unsuccessfully endeavored to obtain sufficient funds with which to reorganize the bank or to make some payment on account to the depositors.
 

 That the refusals of the defendant to pay its demand obligations constitute continuing acts of insolvency. That as the result thereof, defendant has forfeited its corporate rights, and it is the duty of the court, upon due proof, to decree forfeiture and to appoint liquidating commissioners, it being to the interest of the creditors and stockholders that such action be taken. That the defendant bank for the last six months has been .unable and refuses to carry on a general banking-business in the customary and normal manner as authorized by its charter. And that such failure and refusal to carry out its charter obligations constitutes in law a forfeiture of its charter and creates a condition wherein its depositors’ rights may be further impaired and they may be required to suffer an additional and serious pecuniary loss.
 

 The defendant bank excepted to plaintiff’s suit, setting up that the district court was without jurisdiction ratione materiae, and, also, that'plaintiff’s petition failed to disclose a cause of action. Both exceptions were over
 
 *1001
 
 ruled by the district court. Defendant, with full reservation of its rights under its exceptions filed its answer, and plaintiff obtained an order on defendant to show cause why judgment should not be rendered in his favor on the pleadings. Thereupon, the defendant bank applied to this court for writs of certiorari and prohibition, and the matter is now before us for decision solely on the plea to the jurisdiction of the court under a rule nisi granted on relator’s application.
 

 The relator bank contends that Act No. Ill of 1920 vests in the state bank commissioner and not in the courts the exclusive right to liquidate an insolvent state bank. Per contra, the respondent, Charles H. Hiern, contends that Act No. Ill of 1920 applies solely to the voluntary liquidation of state banks and not to their involuntary liquidation as is the case presented here, and that the right of a depositor to sue for the forfeiture of the charter of a state bank and its liquidation is governed by section 13 of Act No. 179 of 1902.
 

 A general system of free banking was established for this state by Act No. 166 of 1856, p. 214. The only supervision of banks established under the statute appears in section 29, which charges the state treasurer and the secretary of state with supervision of the act and authorizes them, in their discretion, to examine the affairs of the banks and to require them to furnish weekly statements of particular features of their business. No protection is afforded depositors other than the right given by section 10 to any creditor or to the state auditor to apply to the court for forfeiture of the charter and the liquidation of an insolvent bank or for a bank which fails to comply with the statutory conditions.
 

 Section 10 of Act No! 166 of 1855 is virtually re-enacted as section 13 of Act No. 179 of 1902, on which the respondent, Charles H. Hiern, predicates his suit for the dissolution and liquidation of the relator bank.
 

 The banking business is essentially public in its nature, requiring honest and careful management in the public interest. It is just as essential for the public welfare that banking institutions be protected from vexatious and expensive litigation by importunate creditors or by dissatisfied stockholders as it is that their individual creditors and stockholders be protected from inefficient and dishonest management. Hence, a sound public policy warrants the state in surrounding its banking institutions with safeguards on the one hand and limitations of power on the other, not only for the protection of persons financially interested in the institutions, but also of the public itself. This purpose appears to be best accomplished by placing banking institutions’ under the supervision and control of an experienced and disinterested public officer who knows, or who has the means of knowing, the condition of such an institution, and whether its condition is such as to render its continued operation hazardous to persons financially interested therein or to the public generally. Evidently with that object in view, the framers of the Constitution of 1898 inserted in that instrument a new article (194), providing that the Governor, with the advice and consent of the Senate, should appoint a state examiner of banks, who should be an expert accountant and who should examine all state banks at least, twice a year. The constitutional article fixes the examiner’s term of office at four
 
 *1003
 
 years and directs the Legislature to define his duties and fix his compensation.
 

 Act No. 198 of 1898, p. 449, was adopted 'by the Legislature to put into effective operation article 194 of the Constitution of 1S98. This statute provided for the commissioning of the bank examiner, fixed his salary and his bond, and defined and regulated his powers and duties, which, however, were of a limited character. By subsequent legislation the duties of the bank examiner were increased, his investigative powers were enlarged, and his control was broadened, but as the legislation creating his office was silent on the question of liquidating banks, the provisions of Act No. 179 of 1902, upon which the respondent, Hiern, is relying, were followed until the year 1910 in winding up the affairs of such institutions as became insolvent.
 

 But in 1910 by Act No. 300, page 505, the Legislature expressly conferred on the state bank examiner the power and authority to liquidate banking institutions when he thought it expedient to do so or when he concluded they were unsafe and unsound.
 

 Act No. 111 of 1920, p. 100, upon which relator relies, prohibits a state bank, savings bank, or trust company from going into voluntary liquidation and declares, in section 1, that whenever a banking institution created under the laws.of this state shall be in an insolvent condition, or whenever an examination by the bank examiner shall show to his satisfaction that any such institution is in an unsound, unsafe, and hazardous condition to continue the banking 'business, it shall not go into voluntary liquidation, but in all such cases the banking institution shall be closed “and its entire liquidation conducted in accordance with the provisions of Act No. 300 of the Acts of 1910 and any amendments thereto that may subsequently be enacted into law.”
 

 Section 2, after providing that the statute is not to be construed as prohibiting any solvent bank from- voluntarily liquidating or effecting a consolidation with any other institution on complying with the pertinent laws, declares that the object and purpose of the act is “to prohibit insolvent and failing Banks from going into voluntary liquidation and thereby avoiding the supervision and control of the liquidation of its assets by the Examiner of State Banks as provided for in Act No. 300” of 1910.
 

 By section 18 of article 6 of the Constitution of 1921, the office of examiner of state banks was abolished and in lieu thereof the office of state bank commissioner was created,- and the Legislature was directed to fix his compensation and to define his powers and duties, which, until otherwise provided by law, were declared to be “the same as now vested in the Examiner of State Banks.”
 

 It appears that notwithstanding the adoption of Act No. 300 of 1910, officers and directors of insolvent and failing banks assumed and exercised the right to liquidate the business of their institutions. This practice evidently led to certain abuses, because the bank examiner in his report for the years 1918-19 •to the Governor and to the Legislature of 1920, declared that a careful study of the conditions as disclosed by his examinations of the institutions under his supervision impelled him to submit for consideration the necessity of legislation upon certain subjects, which are set forth. Among these subjects is a recommendation concerning the voluntary
 
 *1005
 
 liquidation of banks, which is couched in the following words, viz.:
 

 “Voluntary Liquidation.
 

 “Third. When a Bank is insolvent or found to be in an unsound and unsafe condition it should not be permitted to go into voluntary liquidation, tout the same should be closed and liquidated by the Examiner of State Banks, which official is responsible to the depositors and stockholders under the law.”
 

 The Legislature of 1920, to which the bank examiner’s recommendation was submitted, passed Act No. Ill of that year prohibiting banking institutions in an insolvent condition from going into voluntary liquidation and providing that all such institutions shall be liquidated 'by the bank examiner as set forth in Act No. 300 of 1910.
 

 Both statutes expressly repeal all laws or parts of laws in conflict with their provisions. And, it seems to us that it was the plain legislative intent that Act No. 300 of 1910 should supersede Act No. 179 of 1902 in so far as the closing and liquidating of banking institutions is concerned. Certainly that appears to be its effect. But if there is any doubt about that, there can be no room for doubt as to the intent of the Legislature in adopting Act No. Ill of 1920. That act expressly deprives an insolvent bank of any right it might otherwise have to arrange for its own liquidation, and in plain terms prohibits any liquidation of an insolvent bank in any other way than by the examiner of state 'banks in the manner prescribed by the law. The purpose of the prohibition expressed in the act being, as set forth in section 2, to prevent an insolvent and failing bank from “avoiding the supervision and control of the liquidation of its assets by the Examiner of State Banks.” And it is quite certain that the Legislature, in prohibiting the voluntary liquidation of an insolvent or failing bank, did not intend to leave the door open
 
 to
 
 such an institution to do indirectly what it could not do directly. Every lawyer and many laymen know that one of the most common forms of provoking a judicial liquidation is for a friendly creditor to apply to the courts for a liquidator or a receiver. It seems too ■ plain for argument, therefore, that the Legislature, which is so largely composed of lawyers, did not intend that an insolvent bank prohibited from initiating a liquidation proceeding itself might invoke the aid of a friendly creditor for that purpose and thereby avoid “the supervision and control of the liquidation of its assets by the Examiner of State Banks.” And there is no good reason to draw any distinction between a voluntary liquidation and an involuntary liquidation. , If the bank commissioner should control and supervise the one, he should also control and supervise the other.
 

 Moreover, another strong indication of the legislative intention to place the exclusive control of the banking business in the hands of the state bank commissioner is to be found in Act No. 75 of 1932, p. 328. That act authorizes the bank commissioner either alone or with the assistance of a liquidator appointed in accordance with Act No. 300 of 1910 to borrow money on the assets of the insolvent bank and
 
 to
 
 use the proceeds of such loan for any corporate purpose, including the payment of dividends to depositors or other creditors. Act No. 75 of 1932 fails to mention expressly or by implication Act No. 179 of 1902. We
 
 *1007
 
 think the omission in the former .act of any reference whatever to the latter act, while conferring exclusive powers upon the liquidators provided for by Act No. 300 of 1910, strongly indicates the belief of the members of the Legislature that the liquidation of insolvent banking institutions was wholly under the control and supervision of the state bank commissioner.
 

 The respondent, Hiern, invokes the familiar rule of statutory construction, that every statute should receive such a construction as will make it harmonize with the pre-existing body of the law. Respondent argues that Act No. 179 of 1902 is not inconsistent with Act No. 300 of 1910 and Act No. 111 of 1920, and, therefore, the three statutes should be construed together and effect given to them all, notwithstanding they were enacted at different times and the latter two acts contain no reference to the former act. And respondent contends that it never was the legislative intention that Act No. 111 of 1920 should in effect repeal sections 13 and 16 of Act No. 179 of 1902, as evidenced by the fact that the Legislature by Act No. 249 of 1918, p. 441, vests liquidators appointed by the courts with the same powers conferred on the bank examiner.
 

 Answering respondent’s argument, we think that the historical development of the legislation, as well as the language of the statutes themselves, clearly evidences the legislative intention of substituting governmental protection for individual vigilance in the control, supervision, and liquidation of the banking institutions of the state. . Under these circumstances,' there is no room for applying the rule of construction invoked by respondent. It is inconceivable that the Legislature intended the broad discretionary powers conferred on the bank examiner by Act No. 300 of 1910, and Act No. Ill of 1920 should be defeated or subverted by any impatient creditor or any dissatisfied stockholder who cannot know, and who has not the means of knowing, the condition of the institution as the bank commissioner is bound to know it. As was said in Craughwell v. Mousam River Trust Co., 113 Me. 531, 95 A. 221, 222: “Banking is necessarily a delicate business. To be successful it must retain public confidence. It must be managed with caution. Needless alarm must be prevented. If a bank is even charged with insolvency or mismanagement, .the charge itself may start it on the road to financial ruin. The alarm caused by a causeless suit may break a strong bank. A slight and causeless alarm may result in a disastrous run upon a solvent savings bank.” Hence, it is the policy of the state to protect its banking institutions against such evil consequences.
 

 Act No. 249 of 1918 makes no reference to any pre-existing statute. The Legislature in enacting that act, clearly overlooked the fact that Act No. 300 of 1910 had superseded Act No. 179 of 1902 to the extent of withdrawing from the courts the right to appoint the liquidators to an insolvent bank and conferring the right to liquidate a bank on the bank’examiner. .Act No. 249 of .1918 could not revive the former statute, except, perhaps, by re-enacting it in full, which it did not do.
 

 But if we are not entirely correct in our appreciation of the effect of Act No. 300 of 1910, the legislative intent is wholly removed from the realm of conjecture by the enact-
 

 
 *1009
 
 ment of Act No. 111 of 1920. That act not only specifically prohibits the voluntary liquidation of an insolvent bank:, but it also specifically prohibits any district court of the state to designate liquidators for such a bank. And the statute expressly declares that whenever a state bank is found by the bank examiner to be in an unsound, unsafe, and hazardous condition for the continuance of business, such bank shall be closed “and its entire liquidation conducted in accordance with the provisions of Act No. 300 of the Acts of 1910 and any amendments thereto that may subsequently be enacted into law.” Section 1. And the avowed “object and purpose” of the act, as set forth in section 2, is to prevent any interference with the supervision and control by the bank examiner of the liquidation of the assets of an insolvent state bank. Therefore, under the plain terms of Act No. 111 of 1920, the provisions of Act No. 249 of 1918, as well as the provisions for liquidating insolvent banks contained in Act No. 179 of 1902, have become wholly inoperative.
 

 The courts of other states have uniformly held under statutes similar to ours that the jurisdiction of the bank commissioner is exclusive and not subject to interference by the courts. See Koch v. Missouri-Lincoln Trust Co. (Mo. Sup.) 181 S. W. 44; Abbott, Com’r of Banking, v. Morris, Judge, 101 W. Ara. 127, 132 S. E. 372; Craughwell v. Mousam River Trust Co., 113 Me. 531, 95 A. 221; Ulmer v. Loan & Building Ass’n, 93 Me. 302, 45 A. 32.
 

 Our conclusion is, therefore, that the plea to the jurisdiction filed by the relator bank to the suit of the respondent, Hiern, is well founded. That the whole scope of the pertinent legislation is to make the jurisdiction of the state bank examiner exclusive in supervising and liquidating state banking institutions ; unless, perhaps, he has refused to act or is acting in such a way as to jeopardize the rights of interested parties. But there is no allegation to that effect in plaintiff’s petition.
 

 For the reasons assigned, the order of the district court • overruling the relator bank’s plea to the jurisdiction is set aside, and it is now ordered that said plea be sustained, and the suit of respondent, Charles H. Hiern, against the relator bank be dismissed at the cost of said respondent.