[1] Plaintiff, Miss Ruby L. Dowling, brought suit against the Canal Bank Trust Company and J. Edgar Monroe, George E. Burgess and John F. Finke, individually and as agents, representatives and liquidating commissioners, seeking to have a receiver appointed to wind up and liquidate the affairs of the Canal Bank and Trust Company. The defendants in their answer asked for a dismissal of the suit and for the lower court to take jurisdiction of the liquidation of the corporation. They asked for the appointment and confirmation of Monroe, Burgess and Finke as liquidators, upon their taking oath and furnishing bond with solvent surety in a sum to be fixed by the court. Various stockholders, comprising the holders of a majority of the stock of the corporation, intervened and joined the defendants in their opposition to the suit. On trial, the lower court gave judgment in favor of defendants and intervenors rejecting the plaintiff's demand and gave judgment in favor of defendants and intervenors on their reconventional demand, appointing and confirming Monroe, Burgess and Finke as judicial liquidating commissioners of the corporation to administer the affairs of the bank in such manner as the court may direct. In this judgment the court also fixed the bond of the liquidators at $50,000.00 each. The plaintiff moved for a new trial and J. S. Brock, the State Bank Commissioner, intervened. The intervention is predicated on the ground that the liquidation of the corporation, under the provisions of Act No. 300 of 1910, had not been completed at the time that the banking commissioner's predecessor in office surrendered the assets of the corporation to the stockholders and that the intervenor is entitled to be recognized as the liquidator of the corporation. The plaintiff and the bank commissioner have appealed.
[2] J. S. Brock succeeded Begnaud as banking commissioner after the assets had been surrendered to the stockholders and before this suit was tried. The intervention filed by Brock was accepted and ordered filed by the lower court on the same date that the motion for a new trial was denied. The purport of the intervention is to the effect that the state banking commissioner was duly appointed as liquidator of the corporation; that the appointment is still in force and effect; that the banking commissioner has never been judicially relieved or discharged from his trust; that the liquidation has not been completed in accordance with the provisions of Act No. 300 of 1910; that the fees and expenses of the liquidation has not been fixed and paid in accordance with the provisions of the act; and that the banking commissioners is entitled to be recognized as liquidator of the corporation. The intervenor prayed to be recognized as the liquidator to continue the liquidation until it is completed as required by the provisions of the act.
[3] After the Canal Bank and Trust Company had been in liquidation for a number of years under the provisions of Act No.300 of 1910, by the state bank commissioner, and after the depositors and creditors allegedly had been paid, there arose a dispute over a tableau of distribution, wherein the depositors were not to receive interest on their deposits, which culminated in litigation. On appeal, we reviewed this dispute in the suit of Liquidation of Canal Bank Trust Co., 211 La. 803, 30 So.2d 841, wherein we pointed out the history of the liquidation, which it is not now necessary to repeat. Some time thereafter, Begnaud, the then bank commissioner, surrendered the assets to the stockholders. It appears that the fees of the attorneys, liquidators, and clerical assistants had not been fixed and paid in compliance with the provisions of Act No. 300 of 1910. Prior to the surrender of the assets to the stockholders on October 7, 1947, four minority stockholders, Mrs. Nellie P. Graham et al., petitioned the court to compel the bank commissioner to file a final accounting. A hearing was had on the petition and the lower court, on March 29, 1948, rejected the rule for an accounting on the ground that the application was premature. The plaintiffs in the rule appealed. The appeal 216 La. 410, 43 So.2d 777, is hereinafter referred to as the Graham suit. The assets were turned over to the stockholders on May 1, 1948, some thirty-two days thereafter. The assets were turned over to the stockholders by the banking commissioner without an order of court authorizing him to do so.
[4] The appeal in the Graham suit seeking an accounting was argued and submitted on the same day that this appeal was taken up by us. Before the judgment was rendered in that case, notice had already been published in the Times-Picayune and the New Orleans Item, daily newspapers of the City of New Orleans, that the assets were to be turned over on May 1, 1948. The first notice to this effect was published on March 31, 1948. The rule for an accounting could not have been premature under these circumstances.
[5] It is argued that it would entail considerable time and expense to prepare a final accounting which would have to be borne out of the assets of the corporation. We are not impressed with this argument for the reason that if the liquidation had been orderly conducted it should not entail much time and expense to prepare the final account. If, on the other hand, the liquidation had not been orderly conducted there would be a greater reason why a final accounting should be made.
[6] The commissioners selected by the majority of the stockholders gave the banking commissioner a discharge which was not approved or authorized by the court wherein the stockholders were to
[7] "(1) assume the liability for the unpaid balances due as compensation to H. G. Thompson, Special Agent, C. C. Smith, Chief Special Agent, John F. Finke, Liquidator, and Dufour, St. Paul 
Levy, Attorneys, and Montgomery, Fenner Brown, Attorneys, for services rendered to the Liquidation of Canal Bank Trust Company and said property, etc. is charged with that liability and any lien therefore which may exist;
[8] "(2) accept delivery of the Canal Bank Building, Baronne and Common Sreets, New Orleans, subject to mortgage in favor of the Mutual Life Insurance Company of New York as per Act before Felix H. Lepeyre, Notary Public, dated March 1, 1948 and recorded N. O. B. 1738, Folio 475;
[9] "(3) assume all taxes, if any legally due by Canal Bank 
Trust Company, in Liquidation, and accept delivery of the property, etc. subject to all said taxes, if any;
[10] "(4) assume all unfinished litigation now existing between the Canal Bank Trust Company Liquidation and others, and agree to hold said Begnaud, Thompson, Smith and Finke harmless from the affects of said litigation and to reimburse them, or any of them, the amount of any judgment, loss, expense, cost or fee that they, or any of them may suffer or incur from said litigation.
[11] "(5) in the event it shall develop that any such obligations are unpaid, assume any valid outstanding obligations of the Canal Bank Trust Company, in Liquidation, and agree to discharge same;
[12] "(6) hold Begnaud et also harmless from all expenses necessary to complete the delivery in accordance with law of all unclaimed and unnoticed balances on deposit including such amounts as were deposited with the National Bank of Commerce in New Orleans for the credit and benefit of particular individual depositors or creditors mentioned in list accompanying such deposits which remain yet unclaimed or unnoticed with the National Bank of Commerce in New Orleans."
[13] It is further stated in the purported discharge, viz.:
[14] "In consideration of delivery of said property, assets, effects, books and records, we do hereby release and discharge said Wilfred J. Begnaud, State Bank Commissioner, H. G. Thompson, Special Agent, C. C. Smith, Chief Special Agent, and John F. Finke, Liquidator, from any further liability to such corporation and its creditors.
[15] "Attached hereto is what is believed to be a complete list of the said remaining property, assets, effects, books and records concurrently being delivered, the intent however is to deliver all such property, assets, effects, books and records whether enumerated on said list or not."
[16] On the same day the majority of the stockholders elected Monroe, Burgess and Finke as liquidating commissioners giving them full power to liquidate the affairs of the corporation and authority, upon affirmative vote of the proper percentage of stockholders, to transfer the assets to a corporation to be formed or cause to be formed by the liquidating commissioners, which corporation was to have shares of stock equal to the number of the outstanding shares of the bank. Surrender of assets was made in pursuance to a notice published on March 25, 1948, stating that the surrender would be made on May 1, 1948.
[17] On May 10, 1948, at a meeting of the stockholders, the authority to create a new corporation was withdrawn. In the minutes of the meeting, we find that attention was called to the fact that C. C. Smith was claiming an unpaid balance on the fees due him as Chief Special Agent; that Dufour, St. Paul and Levy and Montgomery, Fenner and Brown, attorneys, were claiming $150,000.00 for services rendered prior to the surrender of the assets. It is also pointed out that Monroe and Toler, attorneys, had agreed to accept $150,000.00 in full settlement of the services rendered by them in the litigation involving the interest due the depositors. See Liquidation of Canal Bank 
Trust Co., cited supra.
[18] Some time prior to the surrender of the assets a number of stockholders entered into an agreement with the liquidators and attorneys to pay them additional amounts for their services rendered while the bank was in liquidation under the banking commissioner. From the minutes of the liquidating commissioners meeting on May 14, 1948, it appears that the liquidating commissioners had paid Monroe and Toler, attorneys, $150,000.00 and had received a receipt therefore. It was agreed that R. J. Lazare and N. T. Dressel, and J. Mort Walker, and W. A. West, were to be paid $6,000, $3,000, $1,800 and $1,200 respectively as additional compensation for services rendered prior to the surrender of the assets. These parties were administrative employees in the liquidation under the banking commissioner. It is stated in these minutes that the liquidators and attorneys had rendered services of great value in the liquidation of the bank under the banking commissioner, and that they had not been paid in full for the services rendered but had agreed in writing, under date of March 18, 1948, with the state banking commissioner, as follows: "The undersigned Harry G. Thompson, Special Agent, C. C. Smith, Special Agent, John F. Finke, Liquidator, Dufour, St. Paul and Levy, Montgomery, Fenner and Brown, attorneys, in and for the liquidation of the Canal Bank and Trust Company, hereby agree that you in your capacity as banking commissioner may turn over all of the assets and property of that liquidation to the stockholders, through their legally elected representatives, provided that the said representatives, in their respective capacities, but not as individuals, assume a liability for the unpaid balances due us for compensation for services rendered to the liquidation and receive said assets charged with that liability, and any lien thereof which may exist."
[19] It is stated in these minutes that pursuant to this agreement the release was given to the banking department and John F. Finke liquidator and that the release contains a stipulation to that affect. It is stated that the balances of the fees are to be paid as follows.
[20] _________________________________________________________________ Amount Due Amount Due H. G. Thompson $57,000 Dufour, St. Paul Levy $120,000 John F. Finke $65,000 montgomery, Fenner Brown $30,000 C. C. Smith $20,000
[21] The above amounts were to be paid as follows:
[22] To be paid now To be paid in To be paid in Jan. 1949 Jan. 1950 -------------- ------------- -------------- Thompson $5,000 $26,000 $26,000
[23] Finke $9,000 $28,000 $28,000
[24] Smith $8,000 $6,000 $6,000
[25] Dufour St. Paul $20,000 $50,000 $50,000 Levy
[26] Montgomery Fenner $30,000 0 0 Brown
[27] We find in the record a tabulated list of the advances purported to have been made from time to time to the Special Agents, Liquidator and the Attorneys, and showing the amounts to be paid by the liquidating commissioners, which are as follows:
[28] --------------------------------------------------------------------- H.G. Thompson Jno. F. Finke Dufour, St. Spec. Agent Liquidator Paul Levy from from from PERIOD 5-20-33 5-20-33 5-20-33 — ---------- -------------- ------------- ------------ Calendar Yr. 1933 — (Inauguration) 5,000.00 1933 6,070.00[1] 5,058.33[1] 7,000.00 1934 10,800.00 9,000.00 12,000.00 1935 10,800.00 9,000.00 15,000.00 1936 10,800.00 9,000.00 18,000.00 1937 — (2nd. Div.) 1937 16,000.00[2] 13,600.00[2] 24,805.53 1938 16,000.00 13,600.00 24,999.96 1939 16,000.00 13,600.00 24,999.96 1940 16,000.00 13,600.00 24,999.96 1941 16,000.00 13,600.00 14,852.04 1942 16,000.00 13,600.00 12,000.00 1943 16,000.00 13,600.00 12,000.00 1944 16,000.00 13,600.00 12,000.00 1945 — (Additional) 15,000.00[3] 15,000.00[3] 40,000.00[3] 10,000.00[3]
1946 15,000.00 13,600.00 12,000.00 1946 — (Additional) 15,000.00[4] 15,000.00[4] 40,000.00[4] 10,000.00 1947 16,000.00 13,600.00 1947 — (Additional) 25,000.00[5] 25,000.00[5] 60,000.00[5] 15,000.00[5]
1948 — (to 5/1/48) 5,333.32 4,533.32 5,000.00 1948 — (Additional) 25,000.00[6] 25,000.00[6] 60,000.00[6] 15,000.00[6]
[29] -------------------------------------------------
[30] 299,803.32 266,191.65
[31] Total Paid By Canal bank Liquidation Under Orders of Court 1,128,800.38
[32] 1948 5,000.00 9,000.00 20,000.00 -----------------------------------------------
[33] (By Comsrs.) 304,803.32 275,191.65 471,157.45
[34] 1949 (Committed) 26,000.00 28,000.00 50,000.00
[35] 1950 (Committed) 26,000.00 28,000.00 50,000.00 ------------------------------------------------
[36] 356,803.32 331,191.65 571,157.45
[37] ----------------------------------------- Montgomery, C. C. Smith Total Fenner Brown Chief Special from Agent 6-20-41a
— ------------- -------------- --------
[38] 5,000.00 18,123.33 31,800.00 34,800.00 37,800.00
[39] 2,500.00 54,405.53 54,599.96 54,599.96 54,599.96 3,147.96 47,600.00 6,000.00 47,600.00 6,000.00 47,600.00 6,000.00 47,600.00
[40] 10,000.00[3] 4,000.00[3] 84,000.00 600.00 47,600.00
[41] 4,000.00[4] 84,000.00
[42] 6,000.00 47,600.00
[43] 15,000.00[5] 6,000.00[5] 131,000.00
[44] 2,500.00 17,366.64
[45] 15,000.00[6] 6,000.00[6] 131,000.00 ---------------------------------------------- 91,647.96 20,000.00 1,128,800.38
[46] 8,000.00 72,000.00 ----------------------------------------------
[47] 28,000.00 1,200,800.38
[48] 6,000.00 110,000.00
[49] 6,000.00 110,000.00 ----------------------------------------------
[50] 121,647.96 40,000.00 1,420,800.38
[51] On March 24, 1948, prior to the surrender of the assets, the Mutual Life Insurance Company of New York, who held a mortgage calling for $2,400,000.00 on the Canal Bank building, an asset of the corporation, addressed a letter, through its vice-president, advising the banking commissioner that the insurance company had no objection to the contemplated surrender of assets if the transferees before delivery would give it a receipt acknowledging that the building is subject to the mortgage and that the transfer of the assets would not in any manner change, alter or affect its rights. It is stated in this letter that nothing herein is to be construed as a waiver or relinquishment of their rights.
[52] It is apparent from a reading of the purported discharge given by the commissioners, selected by the majority of stockholders, to the banking department that the unclaimed and unnoticed balances on deposit for the credit and benefit of particular individual depositors or creditors were deposited with the National Bank of Commerce instead of the Treasurer of the State of Louisiana, as required by Act No. 54 of 1944.
[53] Insofar as the plaintiff's application for a receiver is concerned, the defendants have now placed the corporation in receivership and the receivers have been duly appointed and confirmed by the lower court. Regardless of whether the stockholders could have had an extra-judicial liquidation under the charter is of no moment since the corporation has been placed in receivership. The fact that they are designated as liquidators instead of receivers does not change the character of their office, they are in fact receivers. Katten v. Merchants 
Planters Bank, 209 La. 128, 24 So.2d 287.
[54] Act No. 300 of 1910 requires the liquidation of a bank to be under the supervision of the banking commissioner. Act No. 111
of 1920 prohibits banks from going into voluntary liquidation. This, in our opinion, announces the public policy of our state regarding the liquidations of banks to the effect that such institutions must be liquidated under the supervision of this state official. Banks have been regarded by both the federal and state governments as being fraught with public interest because both the federal and state governments have stringent laws to protect the general welfare of the public. In the case of Hiern v. Interstate Trust Banking Co., 178 La. 998, 1002,152 So. 684, 685, this Court reviewed the various statutes dealing with the liquidation of banks by the banking commissioner and made this pertinent observation, viz.: "The banking business is essentially public in its nature, requiring honest and careful management in the public interest. It is just as essential for the public welfare that banking institutions be protected from vexatious and expensive litigation by importunate creditors or by dissatisfied stockholders as it is that their individual creditors and stockholders be protected from inefficient and dishonest management. Hence, a sound public policy warrants the state in surrounding its banking institutions with safeguards on the one hand and limitations of power on the other, not only for the protection of persons financially interested in the institutions, but also of the public itself. This purpose appears to be best accomplished by placing banking institutions under the supervision and control of an experienced and disinterested public officer who knows, or who has the means of knowing, the condition of such an institution, and whether its condition is such as to render its continued operation hazardous to persons financially interested therein or to the public generally."
[55] In the case of Interstate Tax Bureau v. Conway, 180 La. 453,460, 156 So. 463, 465, this Court stated that "The business of banking is subject to regulation under the police power of the state. Noble State Bank v. Haskell, 219 U.S. 104, 31 S.Ct. 186,55 L.Ed. 112, 32 L.R.A., N.S., 1062, Ann. Cas. 1912A, 487."
[56] It is provided in Section 1 of Act No. 300 of 1910 that the banking commissioner with the approval of the Governor is authorized to close a bank under certain conditions and to "take possession of its books, property and affairs and retain such possession until its affairs are finally liquidated as hereinafter provided for," unless the stockholders shall relieve the unsound condition to the satisfaction of the bank commissioner by making voluntary assessments. In section 2 of the act the bank commissioner is authorized to appoint special agents to assist him in the liquidation and he is required to petition the district court in which the corporation under liquidation is located to fix their bond in such manner as is required by law in judicial liquidations. He is authorized to appoint such attorneys and procure such clerical assistance as he deems necessary. Section 6 of the act provides "that the compensation of the special Agent, counsel, clerical assistants and all other necessary expenses of the liquidation and distribution,shall be fixed by the State Examiner of State Banks subject to the approval of the District Court of the Judicial District in which the corporation under liquidation is domiciled." Section 10 of the act provides "that whenever the State Examiner of States Banks shall have paid all necessary costs and expenses of the liquidation of a corporation and shall have paid to each and every depositor and creditor of such corporation (not including stockholders and their claims on account of stock owned by them) whose claims have been duly approved and allowed the full amount of such claims on their equitable and ratable proportion thereof and shall have made proper provision for all unclaimed and unnoticed balances on deposit as provided for herein" that he shall call a meeting of the stockholders by giving notice by advertisement for a period of thirty days at which meeting the bank commissioner shall appear and surrender the assets of the corporation. Upon the transfer of the assets the bank commissioner shall be discharged from further liability to the corporation and its creditors. It provides that the bank commissioner and his bondsman are responsible for damages to those who have suffered by reason of any action of the bank commissioner under authority of the act when his action was resorted to without reasonable or probable cause. (Italics ours.)
[57] In the adoption of the act the legislature did not intend to dispense with the procedure followed in judicial liquidations. We pointed this fact out in the case of Liquidation of Canal Bank Trust Co., supra [211 La. 803, 30 So.2d 850], a suit instituted in the liquidation proceedings of this bank wherein we stated that "In our opinion, when the legislature adopted Act No. 300 of 1910 authorizing the bank commissioner under certain conditions to take possession of banks and to liquidate their affairs, without detailing the exact procedure to be followed and without mentioning the rights of the creditors of such institutions to interests, it was its intention that such statute should be harmonized with the, then existing law and policy of this state and that the liquidation of the bank's affairs would, therefore, be controlled by the law already in force with respect to interest and with respect to the procedure followed in ordinary judicial liquidations."
[58] In the case of In re Hibernia Bank Trust Co., 203 La. 195,13 So.2d 833, wherein a proposed compromise of an alleged doubtful debt in a bank under liquidation by the banking commissioner was being considered, this Court pointed out that although Section 1 of Act No. 300 of 1910 contained no express provision requiring any notice of such proposed compromise, it is clearly a better and safer practice to give the notice in the more important steps taken in the liquidation proceedings for the reason that it would protect the right of the creditors to intervene and avoid any question as to the constitutionality of the statutory provisions or of any injustice being done the right of the creditors.
[59] The liquidation of homesteads are also placed under the supervision of the banking commissioner because of public interest and statutes of a similar nature have been enacted for that purpose. In the case of In re Phoenix Building Homestead Association, 203 La. 565, 14 So.2d 447, 449, wherein we entertained, on appeal, a controversy regarding the payment of attorneys fees for services rendered in the liquidation of a homestead, it is stated:
[60] "It has been repeatedly held by this court since its decision in the case of Dussuau's Syndics v. Bredeaux, 4 Mart., O.S., 450, in 1816, and has that long been the settled law of this state, that judgments homologating accounts are final and have the authority of the thing adjudged. Louisiana Insurance Co. v. Campbell, 6 Mart., N.S., 131; Mayfield v. Comeau, 7 Mart., N.S., 180; Kirkland v. His Creditors, 2 La. 205; Huntstock v. His Creditors, 11 La. 569; Ory v. His Creditors, 12 La. 121; Lang v. Their Creditors, 14 La. 241; Gardiner v. Brashear, 9 Rob. 61; Allinet v. His Creditors, 15 La.Ann. 130, 132; In re Succession of Conrad, 45 La.Ann. 89, 11 So. 935; Searcy Co. v. Their Creditors, 46 La.Ann. 376, 14 So. 910; Succession of Allen, 49 La.Ann. 1096, at page 1111, 22 So. 319; Succession of Rabasse, 50 La. Ann. 746, 747, 23 So. 910; and Woodward, Wight Co. v. National Box Co., 168 La. 701, 123 So. 296, 298. In the latter case this court said: `In so far as a judgment approving a provisional account of a receiver determines specifically the rights of the creditors, or of any one of them, it becomes res judicata, and the issue so determined cannot be reopened by way of opposition to a subsequent account rendered by the receiver.'
[61] "The object and purpose of amending Section 67 of Act No.140 of 1932 was, as expressed in the title of Act No. 44 of the Second Extra Session of 1934, `to grant new and greater powers to the State Bank Commissioner and Supervisor of Homestead and Building and Loan Associations under Section 67 with reference to the closing and liquidation of said institutions,' and in order to carry out this object, the legislature saw fit to authorize the supervisor or liquidator on the order of and subject to the approval of the district court to fix the compensation of the special agent, counsel, clerical assistance, and other necessary expenses of liquidation and distribution, and to pay such fees `out of the funds of such association, society or company in his hands,' by preference upon the approval of the judge. He was likewise authorized to release, compromise or otherwise settle all debts or claims due to or by the corporation, sell its real property, and perform other such acts of administration under a similar procedure. But in thus facilitating prompt administrative action in the closing and liquidation of such institutions by relieving the liquidator of the necessity of proceeding through the former channel of filing a tableaux and having the same homologated before performing the most simple of tasks, the legislature did not contemplate or thereby intend that the liquidator's responsibility and obligation of periodically or finally accounting for his administration was forever dispensed with.
[62] "This interpretation was placed on Act No. 44 of the Second Extra Session of 1934 not only by the former liquidator, his attorneys, and the five judges of the Civil District Court for the Parish of Orleans, but also by the present liquidator and his attorneys, for, in filing the petition with this fourth account, the one here being opposed, the liquidator prayed `that notice of the filing of said account be published according to law, and that, in due course, the same account be approved and homologated, and the funds be ordered distributed in accordance therewith,' and the judge signed the order to that effect.
[63] "For us to hold otherwise would mean that the accounts of any and all liquidators of homestead associations in this state, as well as all items thereon, whether involving distribution of assets, payment of claims, or sales of real estate, would forever be open to constant attack upon the mere whim of interested parties or succeeding public officials, rendering the finality of any act on the part of the liquidator absolutely impossible without involved and protracted litigation. This was clearly not the intention of the legislature, for in the amending act we find the limitation that within six months from the rejection of any claim by the liquidator the interested party might resort to the courts for the recognition of such claim."
[64] Under the express provisions of Act No. 300 of 1910, as Amended by Act No. 54 of 1944, the attorney's fees, the liquidator's attorney's fees, the fees of clerical assistants and other expenses of the liquidation must be fixed and approved by the court and the unclaimed balances of depositors and creditors must be placed with the state treasurer before the banking commissioner is warranted in surrendering the assets of the corporation to the stockholders. These provisions are mandatory and the statute provides that they shall be done before the surrender is made. Moreover, an accounting of the trusteeship must be made to the court before the assets can legally be turned over to the stockholders. The court supervising the liquidation must approve the fees and other expenses of the liquidation after interested parties have been given an opportunity to oppose them. When the statute says that after the banking commissionershall have complied with its provisions he may surrender the assets to the corporation, it contemplated that this fact must be established by some procedure before the court such as a final account. It would be unreasonable to believe that the legislature would enact such stringent laws to protect the interest of the public and to protect parties interested in an insolvent bank and would at the same time leave it entirely in the discretion of the banking commissioner to surrender the assets whenever he deemed it necessary without giving the interested parties an accounting of the trusteeship or an opportunity to oppose any mistakes that such commissioner might have made in the liquidation of the corporation. We cannot construe Act No. 300 of 1910 as dispensing with the orderly procedure followed in judicial liquidations in these institutions of public interest. The legislature evidently contemplated that these were additional safeguards to be complied with in the orderly liquidation of banks.
[65] It does not appear that any accounting has been made during the many years that this bank has been in liquidation. It is impossible to determine without an audit just what has transpired in this liquidation. We cannot say, after examining the record, whether or not there are any other outstanding obligations. The record is voluminous and not systematically made up. It is difficult to find anything in the record as it now stands. It appears to us that the only way to determine the status of the liquidation is by the requirement of a final accounting.
[66] It has been argued that the present bank commissioner has no interest entitling him to intervene in these proceedings and that he cannot controvert the actions of his predecessor in office. It must be borne in mind that the bank commissioner is a public official and the duty imposed on that office rests upon the office irrespective of who may be serving in that capacity. In other words, the statute makes it the duty of the official and not the person holding the position to properly liquidate banks. If a person holding that office realized that he had not complied with the mandatory provisions of the law and had received an illegal discharge, it would be his bounden duty to correct the errors and such would be the duty of those succeeding him. Moreover, since this matter has been called to the attention of this Court wherein an announced public policy of this state is involved, it would be our duty to see that the law has been complied with and not give our approval to the violation of the mandatory provisions of a statute dealing with a matter of public policy. If we were to do so, it would warrant departures from the mandatory provisions of the statute and the procedure followed in ordinary judicial liquidation.
[67] It is contended that the bank commissioner in this case departed from the established procedure usually followed in the liquidation of banks. Our attention is called to the fact that in all the cases presented to this Court, involving liquidations of banks, that the laws governing judicial liquidations were not dispensed with and were followed even to the filing of a final account. Only recently this Court ordered a special fixing for a hearing of a case where there was a dispute over an opposition to a final account in a bank under liquidation by the banking commissioner. In re Bank of Baton Rouge in Liquidation, bearing docket No. 39,592 of this Court.
[68] We might say that no case has been pointed out by the defendants wherein the laws governing judicial liquidations have been dispensed with in the liquidation of a bank after a challenge to this effect was urged in argument.
[69] We have given considerable thought as to the decree we should render in this case. It is our desire to expedite the liquidation of the bank, but we cannot give our approval to the disregard of the mandatory provisions of the statute and the failure to comply with the ordinary procedure required in judicial liquidations. It appears that the depositors and creditors of the bank, other than the mortgage on the bank building, and the expenses of the liquidation under the bank commissioner, heretofore mentioned, have been paid. However, we cannot say that this is true with any degree of certainty in absence of a final accounting and by the stipulations in the discharge given the bank commissioner, wherein the commissioners elected by a majority of the stockholders assumed all pending litigation and outstanding obligations of the bank. We have no difficulty in disposing of the failure of the bank commissioner to deposit the unclaimed and unnoticed balances on deposit for the credit and benefit of particular individual depositors or creditors because that can be cured by an order directing the receivers to place the deposits with the state treasurer.
[70] What has given us more concern in this case is the failure to comply with the mandatory provisions of the statute, the failure to make a final accounting, the unauthorized transfer of the assets and the invalid discharge given in pursuance thereto. These are matters that must be complied with in the court having jurisdiction of the liquidation under the bank commissioner. In view of the fact that the bank is now under receivership in another division of the Civil District Court, no useful purpose could be gained in ordering all the assets, books, etc., transferred and re-transferred after compliance with the views herein expressed. We have arrived at the conclusion that we will not disturb the receivership proceedings only insofar as necessary. The bank owns considerable assets and the receivers could continue to liquidate its affairs while the bank commissioner complies with our order in another division of the Civil District Court. By this means the receivers can continue with the liquidation and the bank examiner can comply with the statute, the rules governing ordinary judicial liquidations and obtain a final discharge that will not be open to future litigation except that provided for in the statute.
[71] In order to carry out our views it is necessary to annual a portion and to amend and recast another portion of the judgment of the lower court. The plaintiffs' demand should not have been rejected because the defendants reconvened and asked the court to place the corporation in liquidation under its supervision and for the appointment of receivers, erroneously termed liquidators, thereby acquiescing in the plaintiffs' demand. The judgment should provide that the appointment of the receivers was made on the plaintiffs' demand and not on the reconventional demand of the defendants. The bank commissioner is entitled to judgment on his intervention to the extent of the views herein expressed.
[72] For the reasons assigned, the portion of the judgment of the lower court rejecting the plaintiffs' demand is reversed and set aside. The portion of the judgment placing the corporation in liquidation, appointing receivers and fixing their bonds is amended so as to give judgment in favor of the plaintiffs placing the corporation in liquidation under the supervision of the court and appointing and confirming J. Edgar Monroe, George E. Burgess and John F. Finke as receivers and fixing the bonds in the amount therein provided for. As thus amended this portion of the judgment is affirmed. In all other respects the judgment is reversed and set aside.
[73] It is now ordered that J.S. Brock, State Bank Commissioner, fix such fees as may be due the attorneys, liquidator, special agents and clerical assistants for the services they rendered during the liquidation of the bank under the bank commissioner, subject to the approval of the court as the law directs; that he prepare and file a final account to be homologated after affording interested parties an opportunity to oppose it; and that upon confirmation of the account he apply for his discharge. This order is to be carried out in Division "A" of the Civil District Court for the Parish of Orleans. The receivers are ordered to pay the expenses necessary to carry out this order.
[74] It is further ordered that the receivers deposit the unclaimed and unnoticed balances on deposit for the credit and benefit of particular individual depositors or creditors with the Treasurer of the State of Louisiana as required by Act No. 54 of 1944. The receivers are ordered to give the bank commissioner access to all effects, books and records necessary to comply with this decree. All costs to be paid by the receivers.
a Montgomery, Fenner Brown, Employed 6/20/41.
[1] Paid Semi-Monthly, under order signed 7/31/22, H. C. Cage, Judge, J. S. Brock, Petitioner.
[2] Paid Semi-Monthly, under order signed 5/3/37, H. C. Cage Judge, J. S. Brock, Petitioner.
[3] Paid 12/11/45, under order signed 12/11/45 Paul Chasez, Judge, W. J. begnaud, Petitioner.
[4] Paid 12/11/46, under order signed 12/5/46 Paul Chasez, Judge, W. J. Begnaud, Petitioner.
[5] Paid 12/10/47 under order signed 12/10/47 Paul Chasez Judge, W. J. Begnaud, Petitioner.
[6] Paid 3/30/48 under order signed 3/30/48 Paul Chasez, Judge, W. J. Begnaud, Petitioner.