·119 So.2d 476

**Succession of William NOCK.**

No. 44954.

March 21, 1960.

Rehearing Denied April 25, 1960.

Dart, Guidry & Dart, New Orleans, for relators.

Caspar R. Bossetta, New Orleans, for respondents.

SIMON, Justice.

William Nock died intestate on January 15, 1958, in a Veterans Administration hospital in North Carolina. On November 3, 1958, the First National Bank and Trust Company of Asheville, North Carolina, addressed a letter to one of the Civil District Court Judges for the Parish of Orleans

stating that it held in the name of William Nock a savings account with a present balance of $646.51; that Nock was apparently a resident of Louisiana, leaving a brother living in New Orleans, another brother in Kentucky and a sister living in Ohio; that apparently the said savings account was the only asset of the estate and that the next-of-kin were reluctant to provoke a formal administration of the estate in order to obtain these funds. Whereupon, it requested information as to whether the probate laws of Louisiana afforded a simple procedure for distribution of these funds, thereby eliminating a formal administration of the estate. The district judge, to whom the letter was addressed, referred the bank to the attorney for the Public Administrator for Orleans Parish.

Proceeding under the authority of LSA–R.S. 9:1583 [1], William P. Hagerty, Public Administrator for the Parish of Orleans, filed a petition in the Civil District Court for the Parish of Orleans alleging that William Nock, a resident of the City of New Orleans, died, intestate, while a patient at the Veterans Administration hospital in North Carolina on January 15, 1958; that decedent left certain property situated in Orleans Parish, and that there were privileged and ordinary debts due by decedent's estate which rendered an administration of the succession necessary; that he desired to be appointed administrator of the estate; that there was no surviving spouse nor were there any heirs present or represented in the State qualified to assume or who claimed the administration; and that an attorney should be appointed to represent the absent heirs, if any there be.

Following a full compliance with all legal requisites, the Public Administrator was appointed and he thereupon sent a certified copy of his Letters of Administration to the aforesaid bank and received a remittance of decedent's savings account. A duly approved and homologated inventory of the estate revealed that the only asset belonging to the estate was said savings account in the North Carolina bank. On January 9, 1959, the Public Administrator filed his account, which was duly advertised, and there being no opposition filed thereto the district court, on January 21, 1959, rendered judgment ordering the said account approved and homologated and the funds distributed accordingly. It appears from this approved final account that the amount of $260.61 was distributed by the Administrator, leaving a balance in his hands of $385.90, and which is presently being held by him for distribution to the rightful claimants. The recipients of the

1. LSA–R.S. 9:1583: "He (the Public Administrator for the Parish of Orleans) shall be appointed administrator of all intestate successions in the parish of Orleans when there is no surviving husband or wife or heir present or represented in the state who is qualified and who claims the right to assume that office."

amount so distributed are the Clerk of Court, Civil Sheriff, the Times-Picayune, the Public Administrator, the latter's attorney, the appraisers of the inventory, the attorney appointed to represent the absent and unknown heirs, Jules P. Doussat for investigative services, and the amount of $15 reserved for future costs.

On November 18, 1959, Robert J. Nock, a resident of the Parish of Orleans, Richard Monk Nock and Annie Nock, both residents of the State of Kentucky, and Mrs. John Heinzman, a resident of the State of California, brothers, sister and niece, respectively, of the decedent filed a rule, bearing the same docket number of the succession proceedings, against the Public Administrator ordering him to show cause why the entire foregoing probate proceedings should not be declared an absolute nullity for want of jurisdiction ratione materiae and why he should not refund to the First National Bank and Trust Company the said sum of $646.51. They contended that they were the sole surviving heirs of decedent; that decedent was born in the State of Kentucky, died in the State of North Carolina, and at no time was he ever domiciled in the State of Louisiana; that he owned no property in the State of Louisiana, either real or personal; and that accordingly the probate proceedings were totally improper, null and void; that the allegation made in the petition of the Pub-

lic Administrator, filed on November 10, 1958, to the effect that the decedent was a resident of the City of New Orleans and that the decedent left no heirs present or represented in the State qualified to assume or claim the administration is false as Robert Nock, brother of decedent, has resided in the City of New Orleans for many years.

The Public Administrator thereupon filed an exception of no cause or no right of action contending that:

(1) the averments in the rule are false, and even if true that movers are without interest in these proceedings, and that until proof of their heirship is made, they are without right to question the legal acts of exceptor;

(2) that the opposition to the appointment of the Public Administrator comes too late;

(3) that the proof of heirship by the summary process here employed is without legal sanction, the only recognized procedure being by petition and citation; and

(4) if the court was without jurisdiction, as alleged, at the time letters of administration were issued, then the court is equally without jurisdiction to entertain the rule, annulling the proceedings had, or rendering a judgment in favor of a third party.

The district judge sustained the exceptions and dismissed the rule, holding that the action of nullity must be by a direct action and not through the summary process. Upon application of plaintiffs in rule we granted writs.

The singular question to be resolved is whether the judgment and all other probate proceedings had in this matter may be annulled by summary process or whether the complaining parties are confined to the ordinary process, an action by means of a petition with citation of the adverse and interested parties. The jurisdictional issue upon which the demand of nullity is based is not before us.

In the case of In re Phoenix Building & Homestead Ass'n, 203 La. 565, 14 So.2d 447, 449, we exhaustively reviewed our jurisprudence pertaining to the effect of judgments homologating accounts, and said:

"It has been repeatedly held by this court since its decision in the case of Dussuau's Syndics v. Bredeaux, 4 Mart., O.S., 450, in 1816, and has that long been the settled law of this state, that judgments homologating accounts are final and have the authority of the thing adjudged. Louisiana Insurance Co. v. Campbell, 6 Mart., N.S., 131; Mayfield v. Comeau, 7 Mart., N.S., 180; Kirkland v. His Creditors, 2 La. 205; Huntstock v. His Creditors, 11 La. 569; Ory v. His Creditors, 12 La. 121; Lang v. Their Creditors, 14 La. 241; Gardiner v. Brashear, 9 Rob. 61; Allinet v. His Creditors, 15 La.Ann. 130, 132; In re Succession of Conrad, 45 La.Ann. 89, 11 So. 935; Searcy & Co. v. Their Creditors, 46 La.Ann. 376, 14 So. 910; Succession of Allen, 49 La.Ann. 1096, at page 1111, 22 So. 319; Succession of Rabasse, 50 La. Ann. 746, 747, 23 So. 910; and Woodward, Wight & Co. v. National Box Co., 168 La. 701, 123 So. 296, 298."

This principle of law was approvingly cited in Liquidation of Canal Bank & Trust Co., 211 La. 803, 30 So.2d 841; Dowling v. Canal Bank & Trust Co., 216 La. 372, 43 So.2d 763; and Bank of Baton Rouge v. Hart Estate, 216 La. 603, 44 So. 2d 311.

Article 610 of the Code of Practice provides: "The party praying for the nullity of a judgment, before the court which has rendered the same, must bring his action by means of a petition; and the adverse party must be cited to appear, as in ordinary suits."

The early case of Widow E. LeFranc, 27 La.Ann. 666, involved an ex parte proceeding by Rule to have the inscription of judgments declared null and ordered erased. The defendant interposed an exception to

the procedure by rule, and we held that the proceeding by rule to annul the judgments complained of was irregular and inadmissible, citing the provisions of Code of Practice, Article 610, supra, and dismissed the suit. Succession of Thompson, 42 La.Ann. 118, 7 So. 477; Richardson v. Trustees Loan and Guaranty Co., Inc., 10 La.App. 363, 120 So. 890.

We cannot fail to observe that the procedure employed in this instance is, to say the least, a novel one and seemingly trods on virgin soil; and in the adjudication of which we have not been afforded the benefit of argumentative briefs by either side. We refer to its innovation for several reasons, either of which not only buttresses the conclusion we reach, but which may be decisive of the issue posed.

The stated capacity of plaintiffs in rule is that of heirs who seek the annullment of an unappealed and therefore final definitive judgment by means of the summary process. As a corollary thereto they seek a judgment commanding a return or refund to the First National Bank and Trust Company of Asheville, North Carolina of the funds comprising the assets of the estate. The rule to show cause is directed solely against the Public Administrator, the bank not being named as a party thereto. Manifestly, a decree ordering the return of these funds to the named bank could prove entirely ineffectual and fruitless for the simple reason that not being a party to the proceedings the bank could justifiably ignore the judgment, or even refuse to comply therewith, leaving the court powerless to enforce its decree.

Furthermore, in accordance with the judgment homologating the account of the Public Administrator and which as shown becomes a final judgment, he had distributed a portion, almost one-half, of these funds to the creditors named in the approved account. Each has received full payment of their respective claims under said judgment. None of these judgment creditors have been named or made parties to the rule to show cause. Plaintiffs make no reference to these paid creditors, but content themselves with the demand that no matter where, why or to whom these funds have been paid, whether by final judgment, as in the instant case, or otherwise, they have the legal right to force a return of the entire original amount returned without naming or making these creditors parties thereto. We think such a procedure finds no sanction in law.

Our Code of Practice, Article 548, provides that "A judgment, when once rendered, becomes the property of him in whose favor it has been given; and the judge can not alter the same, except in the mode provided by law."

In Castelluccio v. Cloverland Dairy Products Co., 165 La. 606, 115 So. 796, we

held that one who obtains a judgment, or in whose favor it is rendered, cannot be deprived thereof except by allowing it to become prescribed, by the action of nullity, or by action of an appellate court in amending, reversing, or setting it aside, since the court rendering the judgment is powerless to alter it except through an action of nullity. See Wainwright v. Wainwright, 217 La. 563, 46 So.2d 902.

Likewise in Connell v. Albritton, La. App., 64 So.2d 507, the court announced the well-recognized principle that where a judgment is not appealed from it is improper for a court on a later date to set it aside on the ex parte motion of the defendants.

Accordingly, we conclude that plaintiffs have mistaken their remedy in employing the summary process to obtain the relief which they seek and that their proper course of procedure is by way of a direct action by petition and citation of the adverse or interested parties, and we therefore approve the ruling of the district judge sustaining the exception of no cause of action and dismissing plaintiffs' suit.

For these reasons the writ of certiorari issued herein is recalled and vacated, and the judgment of the district court maintaining the exception of no cause of action and dismissing plaintiffs' rule is affirmed. All costs to be borne by plaintiffs in rule.