SAMUEL, Judge.
This is a motion to dismiss an appeal. The judgment appealed from was rendered after a trial on appellants’ opposition to a provisional account at which trial appearances were made by appellants, the testamentary executrix and the other heirs. The judgment dismissed the opposition and approved and homologated the provisional account.
The executrix has moved for dismissal on the grounds that the judgment is not a final judgment and appellants do not show or allege irreparable injury. She relies upon LSA-C.C.P. Art. 2083, which provides that an appeal may be taken from a final judgment and from an interlocutory judgment when the latter may cause irreparable injury, and LSA-C.C.P. Art. 3337, which provides that a judgment homologating any account other than a final account shall he prima facie evidence of the correctness of the account and a judgment homologating a final account has the same effect as a final judgment in an ordinary action.
Other than the possibility that the issues raised by their opposition can be reopened by way of opposition to a subsequent account, we know of no procedure by which appellants can prevent the judgment of homologation from becoming finally determinative of those issues. And our settled jurisprudence is that a judgment approving a provisional account is res judi-cata as to issues passed upon and determined by that judgment; such issues cannot be reopened by way of opposition to a subsequent account. Succession of Nock, 239 La. 593, 119 So.2d 476; Dowling v. Canal Bank & Trust Co., 216 La. 372, 43 So.2d 763; Liquidation of Canal Bank & Trust Co., 211 La. 803, 30 So.2d 841; In re Phoenix Building & Homestead Ass’n, 203 La. 565, 14 So.2d 447; Woodward, Wight & Co. v. National Box Co., 168 La. 701, 123 So. 296, 297.
*214 ana Highway Department. The defense is that there is no causal connection between Mr. Price’s death and his employment. The trial judge held for the plaintiff. Defendant appealed. Plaintiff answered the appeal contending the lower court erred in denying penalties and attorney’s fees, as well as in failing to consider a $4 per day subsistence allowance as part of the weekly wage of Mr. Price.
There is little dispute as to the facts. Mr. Joe Price, 63 years of age, had been employed by the Highway Department for several years as a flagman and truck dumper on highway repair crews. During the latter part of December, 1960, Price was transferred to a crew which cleared rights of way. Price's job was to cut and trim trees with a double-bladed axe. This work was far more strenuous than his previous work as a flagman and dumper. He tried, without success, to obtain a transfer back to his previous work. He worked at this new job for about 40 to 50 days before his death.
On the day of his death, January 30, 1961, Price drove his pickup truck to the job site near his home. After working until noon, he drove home for lunch. Customarily he rested after the noon meal, but on this particular day he immediately drove back to the work site to load his truck with fire wood, which he had cut on the right of way for his own use at home.
Assisted by a fellow employee, he finished loading his truck with the fire wood about 10 minutes before 1 o’clock. He rested this 10 minutes and then returned to work, using his axe to trim a fallen hickory tree. After so working for 30 to 40 minutes he suffered a heart attack and died on the job. The cause of death was acute coronary occlusion.
Also relevant is the fact that in 1949 Mr. Price had been examined by a doctor who diagnosed “hypertensive cardiovascular disease, mild”. Thereafter he suffered periodically from heart disease symptoms described by his wife as “indigestion and
pains and hurting in his chest a lot, cramps in his legs and things like that”.
Under these facts, the theory of the defense is that since Mr. Price had worked at his new and more strenuous duties for 40 to 50 days, he had developed a tolerance for this type of work and had demonstrated that he could do the work without suffering a heart attack; that since the loading of the fire wood on the truck during the noon hour was more strenuous than the axe work, it was the wood loading and not the tree chopping which caused the fatal attack.
To support this theory, defendant introduced the testimony of two doctors. Dr. Robert J. Freedman, a specialist in internal medicine, was persistent in his opinion that since the loading of the wood was extra work not usually done by Mr. Price and since it was more strenuous than the axe work, it is more likely that the wood loading, not the tree chopping, precipitated the “coronary episode.”
Dr. Rufus Craig, also a specialist in internal medicine called by the defendant, did not, in our opinion, support defendant’s theory of the case. As we understand Dr. Craig’s testimony it was his opinion that all of the things done by Mr, Price on that day, which added stress to the heart, contributed to the fatal attack. Dr. Craig mentioned the work done by Mr. Price during the-morning hours, the hearty lunch eaten at noon, the failure to take the usual rest, the loading of the wood and the work done in-the afternoon as contributing causes. When asked on cross-examination whether he could state that it was the wood loading' and not the tree chopping which caused, the heart attack, Dr. Craig answered: “I don’t think we can. As I have stated in my answer to the first question there, I think it’s impossible to separate these two-physical activities.”
Plaintiff introduced the testimony of two-highly qualified experts. Dr. Nicholas J. Chetta, coroner of Orleans Parish for over 12 years, in which position he has performed thousands of autopsies, testified that al~
*213 Insofar as appellants’ right to appeal is concerned the judgment of homolo-gation is final. Appellants therefore have the right to appeal under the provisions of LSA-C.C.P. Art. 2083.
The motion to dismiss is denied.
Motion denied.